Opinion for the Court filed by Circuit Judge BOGGS.
 

 BOGGS, Circuit Judge:
 

 Appellees Robert and Daniel Socey were indicted on various drug-related offenses
 
 [1]
 
 and on one count of possessing an unregistered firearm, D.C.Code Ann. § 6-2311(a) (1981). Before trial, the district court granted the Soceys’ motion to suppress evidence which was in plain view during a warrantless entry and “securing” of their house in the District of Columbia. The United States has taken an interlocutory appeal, pursuant to 18 U.S.C. § 3731 (1982), arguing that the entry into the Socey home was justified by exigent circumstances because police officers feared the imminent destruction of evidence. Alternatively, the government contends that, even were the warrantless entry to secure the premises unjustified, the evidence in plain view was admissible under either the inevitable discovery rule or the independent source rule. Finding merit to the first contention, we reverse the district court’s suppression order.
 

 I
 

 In January 1987, Detective John Centrel-la of the Metropolitan Police Department received information from an informant, designated C-l, that Robert Socey was a major distributor of cocaine and marijuana in Maryland, Virginia and the District of Columbia for a Vincent Soper. On the basis of this information, Centrella purchased cocaine from members of the Socey organization on three occasions, one of which occurred at Robert Socey’s home at 4132 Military Road in Northwest Washington, D.C.
 

 The informant told Centrella that Robert Socey and others had travelled to Florida on several occasions in the past year to purchase cocaine for distribution in the District of Columbia. According to C-l, Robert Socey would use couriers or “mules” from a Cuban cocaine organization in Florida to transport kilogram quantities of cocaine to the Socey residence on Military Road.
 

 On March 16,1987, C-l advised Centrella that Robert Socey and Soper had recently
 
 *1442
 
 travelled to Florida to purchase drugs, and were staying at the Surrey House in Miami Beach. Receiving information that Soper had travelled by automobile, Centrella asked the Miami Beach Police Department to check for an automobile bearing District of Columbia, Virginia or Maryland tags parked at the Surrey House. Miami Beach police reported that a Datsun with District of Columbia tag number 227-987 was parked at the hotel in question. A computer check of the tag number revealed the car was listed to Vincent Soper. This information confirmed an earlier report by C-l that Soper owned a brown Datsun, which the informant averred Soper frequently used to transport cocaine and marijuana from Florida to Robert Socey’s residence.
 

 On March 22, 1987, C-l informed Cen-trella that Robert Socey and Soper would be leaving Florida sometime the next day, heading back to Socey’s house, with a large amount of cocaine and possibly marijuana. They would be driving Soper’s brown Dat-sun, with registration tag number 227-987. Centrella verified this information by calling the Surrey House, which reported that Soper and Robert Socey had checked out of their respective rooms.
 

 After receiving this confirmation, Cen-trella began watching the Socey home on Military Road. On March 25, 1987, at approximately 10:00 a.m., he first spotted Soper’s brown Datsun parked in front of the Socey house. Centrella immediately called his office and requested additional officers to maintain a watch of the house and the Datsun. He then maintained surveillance until reinforcements arrived.
 

 About noon, Centrella was relieved by Detectives Donald Zattau, Joe Brenner and David Hayes. Before departing to secure a warrant, Centrella instructed Zattau to stop Soper’s automobile if it should leave the area.
 

 During the next five hours, the detectives observed two or three people arrive and enter the house and one person leave the premises. At approximately 4:45 p.m. that afternoon, Soper arrived by taxi and entered the Socey home. A short time later, he left carrying two large trash bags. Soper walked by a dumpster and placed the bags into the trunk of his Datsun. He then returned to the house and made a second trip to his car with another trash bag. After briefly talking with Robert So-cey’s mother, Soper drove away.
 

 Believing Soper was transporting narcotics, Zattau and Hayes pursued the vehicle, leaving Brenner to watch the house. When the Datsun was beyond view of the Socey residence, the detectives stopped the car and arrested Soper. They searched the Datsun and found 24 pounds of marijuana, scales and packaging materials in the trunk. A small amount of the drug and $5,000 in cash were also found on Soper.
 

 After Soper was arrested, Zattau and Hayes returned to Military Road. By this time, Brenner had stopped another automobile, a Camaro, as it left the Socey residence. The vehicle was detained at the end of the block, but in view of the Socey house. Two marked police cars arrived and assisted Brenner; neighbors began to congregate to view the situation.
 

 Zattau and Hayes feared that the commotion would alert those in the house to the police presence. They decided to enter the residence and “secure” the premises to ensure that evidence would not be destroyed. At the suppression hearing, Zat-tau testified that, at this time, he believed the search warrant had already been signed and was en route to the scene.
 
 [2]
 
 He was mistaken. A warrant was not issued until fifteen or twenty minutes after the officers had entered and secured the house.
 
 [3]
 

 
 *1443
 
 Zattau and Hayes, along with two uniformed officers, approached the Socey house and identified themselves as police officers. When the door was opened, Hayes went directly upstairs, followed by a uniformed officer. Zattau secured the first floor by ushering all the people on that level toward the dining room table; he told the occupants that he had a warrant. Hayes entered Daniel Socey’s room, where he observed Robert and Daniel Socey and a third person shaving marijuana off of large bales, weighing the drug and bagging it. They were arrested. The uniformed officer who had accompanied Hayes upstairs looked into Robert Socey’s room and observed a shotgun, a blue duffel bag and a pile of marijuana on a dresser.
 

 By this time, a search team had arrived, but they and the officers already on the scene were instructed not to search the premises without a warrant. Shortly thereafter, Centrella called the officers and communicated to them that a warrant had been issued and a search could proceed. When he arrived at the Socey home around 7:00 p.m. with the warrant, a full search was already in progress.
 

 Before trial, Robert and Daniel Socey moved to suppress the evidence in plain view during the warrantless “securing” of their house, as well as the items seized pursuant to the warrant. In response, the government asserted that the entry into the Socey home was justified by exigent circumstances because the officers feared the occupants, alerted by the commotion outside, would become aware of the police presence and destroy evidence. Alternatively, the government argued that, even were the warrantless entry to secure the premises unjustified, the evidence was admissible under either the inevitable discovery rule,
 
 Nix v. Williams,
 
 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), or the independent source rule,
 
 Segura v. United States,
 
 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).
 

 Finding the entry to be unjustified, the district court granted the Soceys’ motion in part, suppressing the evidence in plain view
 
 [4]
 
 of the “securing” officers, but admitting the evidence “first seen and seized by the search team” after the warrant had been issued. The court first rejected the government’s contention that exigent circumstances excused the need for a warrant. The court said:
 

 The police explanation of the circumstances surrounding the entry satisfies the prosecution’s burden to show probable cause. The police were entitled to a warrant, and in time, obtained one. But the circumstances do not justify the entry to secure the premises before a warrant had been signed. This was a residence, not a moving vehicle that was entered.
 
 Compare Payton v. New York,
 
 445 U.S. 573 [100 S.Ct. 1371, 63 L.Ed.2d 639] (1980),
 
 with Carroll v. United States,
 
 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925). There is no evidence that any of the occupants of the home were aware of the police surveillance or of the activity on the street following the stop of the white Camero [sic]. Nor is there any evidence that suspects were attempting to dispose of contraband.
 
 Compare United States v. Johnson,
 
 802 F.2d 1459 (D.C.Cir.1986). Mere speculation that the possibly ill-advised actions of the police in stopping the Camero [sic] in sight of the house might have aroused the suspicion of the occupants does not create a degree of exigency sufficient to justify a warrantless entry.
 
 See Vale v. Louisiana,
 
 399 U.S. 30, 34-36 [90 S.Ct. 1969, 1971-73, 26 L.Ed.2d 409] (1970).
 

 The court also rejected the government’s alternative contention that the evidence in plain view was admissible under the inevitable discovery rule or the independent source rule.
 

 The United States has appealed the district court’s suppression order, raising the same arguments it presented below. We hold that there were exigent circumstanc
 
 *1444
 
 es, which allowed the police to enter and secure the Socey residence without a warrant. Since we reverse the district court's suppression order on this basis, we need not address the applicability of the inevitable discovery rule and the independent source rule.
 

 II
 

 The Fourth Amendment prohibits governmental intrusions into a private dwelling without a warrant supported by probable cause, subject only to a few carefully delineated exceptions.
 
 Thompson v. Louisiana,
 
 469 U.S. 17, 19-20, 105 S.Ct. 409, 410-11, 83 L.Ed.2d 246 (1984).
 
 See also Payton v. New York,
 
 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980) (“In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.”);
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 474-75, 91 S.Ct. 2022, 2042-43, 29 L.Ed.2d 564 (1971) (“a search or seizure carried out on a suspect’s premises without a warrant is
 
 per se
 
 unreasonable, unless the police can show ... the presence of ‘exigent circumstances’ ”);
 
 McDonald v. United States,
 
 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). Indeed, the “physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.”
 
 United States v. United States District Court,
 
 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). In view of this strong command, the Supreme Court has declared that searches and seizures inside a residence without a warrant are “presumptively unreasonable,”
 
 Payton v. New York,
 
 445 U.S. at 586, 100 S.Ct. at 1380, and the police bear a “heavy burden when attempting to demonstrate an urgent need” that might justify a warrantless search.
 
 Welsh v. Wisconsin,
 
 466 U.S. 740, 750, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984).
 
 See also Vale v. Louisiana,
 
 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970);
 
 United States v. Johnson,
 
 802 F.2d 1459, 1461 (D.C.Cir.1986) (“The burden is on the prosecution to demonstrate that exigent circumstances were present.”).
 
 [5]
 

 The Supreme Court has recognized only a few emergency situations excusing the need for a warrant.
 
 See, e.g., United States v. Santana,
 
 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-10, 49 L.Ed.2d 300 (1976) (hot pursuit of a fleeing felon);
 
 Warden v. Hayden,
 
 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782 (1967) (same);
 
 Schmerber v. California,
 
 384 U.S. 757, 770-71, 86 S.Ct. 1826, 1835-36, 16 L.Ed.2d 908 (1966) (destruction of evidence);
 
 Michigan v. Tyler,
 
 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) (fire on premises, even if only smoldering). The Court has also ruled that the gravity of the underlying offense will have a great influence on the presence of exigent circumstances: “[Application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed.”
 
 Welsh v. Wisconsin,
 
 466 U.S. at 753, 104 S.Ct. at 2099.
 
 Accord, Dorman v. United States,
 
 435 F.2d 385, 392 (D.C.Cir.1970) (en banc).
 

 “The need to preserve evidence that may be lost or destroyed if a search is delayed is and has long been recognized as an exigent circumstance.”
 
 Johnson,
 
 802 F.2d at 1462.
 
 See also United States v. McEachin,
 
 670 F.2d 1139, 1144 (D.C.Cir.1981);
 
 United States v. Allison,
 
 639 F.2d 792, 794 (D.C.Cir.1980). This need may be particularly
 
 *1445
 
 compelling where narcoticsare for “narcotics can be easily and quickly destroyed while a search is progressing.”
 
 Johnson,
 
 802 F.2d at 1462. This court has also noted that “ ‘efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.’ ”
 
 Ibid,
 
 (quoting
 
 United States v. Rubin,
 
 474 F.2d 262, 268-69 (3d Cir.),
 
 cert. denied sub nom. Agran v. United States,
 
 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973)).
 

 Police officers relying on this exception to the warrant requirement must show an objectively reasonable basis for concluding that the destruction of evidence is imminent.
 
 United States v. Napue,
 
 834 F.2d 1311, 1326 (7th Cir.1987). The Seventh Circuit has ably summarized this point:
 

 In determining whether agents reasonably feared imminent destruction of the evidence, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured.
 

 United States v. Rivera,
 
 825 F.2d 152, 156 (7th Cir.),
 
 cert. denied sub nom. Robles v. United States,
 
 - U.S. -, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987).
 
 See also United States v. Moore,
 
 790 F.2d 13, 15 (1st Cir.1986). This determination will, of course, vary from case to case, and thus “the inherent necessities of the situation at the time must be scrutinized.”
 
 Rubin,
 
 474 F.2d at 268.
 

 In
 
 Vale v. Louisiana,
 
 399 U.S. 30, 90 5.Ct. 1969, 26 L.Ed.2d 409 (1970), the Supreme Court ruled that an arrest outside the arrestee’s home did not automatically justify a warrantless entry into the home on the assumption that evidence was likely to be destroyed.
 
 Id.
 
 at 35, 90 S.Ct. at 1972 (“We decline to hold that an arrest on the street can provide its own ‘exigent circumstance’ so as to justify a warrantless search of the arrestee’s house.”). Before such an exigency is present, according to the Court, the police must have a reasonable basis for believing that there was someone in the house who would likely destroy evidence.
 
 Id.
 
 at 34-5, 90 S.Ct. at 1971-72.
 

 Consistent with
 
 Vale,
 
 we believe a police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a home if he can show 1) a reasonable belief that third persons are inside a private dwelling and 2) a reasonable belief that these third persons are aware of an investigatory stop or arrest of a confederate outside the premises so that they might see a need to destroy evidence.
 
 See Napue,
 
 834 F.2d at 1327;
 
 United States v. Agapito,
 
 620 F.2d 324, 336 n. 18 (2d Cir.),
 
 cert. denied,
 
 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980).
 
 [6]
 

 Once police officers have the requisite belief that destruction of evidence is imminent, their entry must be “limited in scope to the minimum intrusion necessary to prevent the destruction of evidence.”
 
 Aquino,
 
 836 F.2d at 1272.
 

 Ill
 

 When faced with a claim of exigent circumstances, we review the district court’s legal conclusions on this issue under a
 
 de novo
 
 standard,
 
 United States v. Andersson,
 
 813 F.2d 1450, 1455 (9th Cir.1987), but review its factual findings under the clearly erroneous standard.
 
 United States v. Lindsay,
 
 506 F.2d 166, 170 (D.C.Cir.1974). Because the essential facts in this case are not in dispute, we focus on the lower
 
 *1446
 
 court's legal conclusion that exigent circumstances were absent.
 

 The government argues that the district court demanded an "erroneous and unrealistic showing of exigency" before excusing the warrant requirement. It contends that the lower court improperly required the government to prove that the occupants in the Socey house were aware of the police presence or the commotion in the street, and that the suspects were attempting to dispose of contraband. We agree.
 

 As noted, the police must have an objectively reasonable basis for concluding that the destruction of evidence is imminent. This standard focuses on what a reasonable, experienced police officer would believe if he observed the events in question as they unfolded. See United States v. Allison, 639 F.2d 792, 794 (D.C. Cir.1980). It does not credit what the particular officers on the scene actually believed, if such beliefs would be unreasonable or unjustified in the situation.
 

 This standard does not permit a court to judge the reasonableness of an officer's belief on the basis of hindsight. United States v. Rivera, 825 F.2d 152, 156 (7th Cir.), cert. denied sub nom. Robles v. United States, - U.S. -, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987); United States v. Erb, 596 F.2d 412, 419-20 (10th Cir.), cert. denied, 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979). If an experienced officer reasonably believes that those inside a home are likely to be alarmed and destroy evidence, the wàrrantless intrusion will be justified, even if it eventually develops that the home was unoccupied or those inside were careless or sloppy in their security, saw nothing at all, and had no intention of destroying any contraband. See Rivera, 825 F.2d at 155-56.
 

 The district court focused exclusively on what the occupants of the Socey home had observed, and on whether they were in fact attempting to destroy evidence. This analysis improperly shifted the inquiry from what the experienced officers reasonably believed, to what the suspects actually knew of the events outside the house and their reaction thereto. See United States v. Rubin, 474 F.2d 262, 268 (3d Cir.), cert. denied sub nom. Agran v. United States, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 168 (1973).
 

 The district court's opinion can also be read to mean that police officers must possess direct evidence that suspects are aware of the police presence and are destroying, or likely to dispose of, evidence. Direct evidence, of course, is very probative and will "obviously support an entry based on exigent circumstances." United States v. Napue, 834 F.2d 1311, 1327 (7th Cir.1987). See United States v. Johnson, 802 F.2d 1459, 1462 (D.C.Cir.1986) (defendant dropped paper bag from second floor apartment and withdrew from window, despite officer's instruction to "halt": "To any even minimally experienced police officer this provided evidence that [the defendant] was aware of the police presence and was seeking to dispose of contraband."). However, in few cases will this evidence be available and, unlike the district court, we do not believe this type of proof is necessary for a finding of exigency.
 

 Iv
 

 Having concluded that the district court applied the wrong legal standard, we now assess the facts in light of the appropriate principles. In judging the government's attempt to prove exigent circumstances, we look to the totality of the circumstances. Johnson, 802 F.2d at 1642 (relying on Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). We are also guided "`by the realities of the situation presented by the record.'" United States v. McEachin, 670 F.2d 1139, 1144 (D.C.Cir.1981) (quoting United States v. Robinson, 533 F.2d 578, 581 (D.C.Cir.1975) (en banc), cert. denied, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976)).
 

 After carefully considering the record, we conclude that there were exigent circumstances justifying the warrantless entry into the Socey home. In particular, we find that the officers on the scene had an
 
 *1447
 
 objectively reasonable basis for concluding that the destruction of evidence was imminent.
 

 We begin by placing the events preceding the warrantless entry into context.
 
 See United States ¶. Rossetti,
 
 506 F.2d 627, 630 (7th Cir.1974) (Stevens, J.) (“when the emergency justification is advanced, we believe it is appropriate to appraise the agents’ conduct during the entire period after they had a right to obtain a warrant, and not merely from the moment when they knocked at the front door.”). The police had well substantiated information that significant quantities of cocaine and possibly marijuana had been brought to the house from Florida in Soper’s brown Dat-sun. They also had reason to believe that the Socey residence was a center of operation for distribution of narcotics in the District of Columbia and surrounding areas. As the district court rightly noted, the police had probable cause to enter the house and “were entitled to a warrant,” which in time they obtained.
 

 While Detective Centrella sought a warrant, three detectives were assigned to watch the house and Soper’s Datsun. From their observations, which lasted some five hours, they reasonably believed that people were inside the house. The detectives had seen, for instance, Robert Socey’s mother speak to Soper before he left. They had also observed two or three people arrive and enter the premises and only one person leave the house.
 

 The detectives were given explicit instructions to stop the Datsun in the event it left the premises, because there was a strong possibility it would be transporting narcotics from the house. When Soper left the house, the officers observed him carrying large trash bags to the automobile. Detective Zattau testified at the suppression hearing that it was common to transport large amounts of marijuana in “large, plastic utility bags,” and Soper’s bags were similar to those he had previously seen carrying marijuana. Thus, the officers had ample reason to believe that narcotics were beginning to leave the house for distribution.
 

 After Zattau and Hayes stopped the Dat-sun and arrested Soper, their search of the automobile confirmed previous information that the Socey residence was a distribution center for narcotics. When they returned to Military Road, Detective Brenner had stopped a Camaro leaving the Socey residence, in the reasonable belief that this automobile was transporting narcotics from the house.
 

 Zattau testified that the Socey house was located in a “quiet, residential neighborhood.” However, the events that rapidly developed pierced that calm. Two marked police cars arrived to assist Brenner in stopping the Camaro. Neighbors began to congregate. From this commotion, it was reasonable for Zattau and Hayes to conclude that the occupants of the house would become aware of the police presence outside.
 
 See United States v. Vasquez,
 
 638 F.2d 507, 532 (2d Cir.1980),
 
 cert. denied,
 
 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981).
 
 Cf. Napue,
 
 834 F.2d at 1327 (“There was no testimony ... that commotion created during the arrest was likely to have alerted anyone in the room to the fact that an arrest had taken place.”). Indeed, because the police had evidence that a large-scale drug operation was conducted within the house, it was not unreasonable for them to believe that such an operation would have some type of look-out system. Accordingly, the agents had a reasonable basis for believing that the occupants of the house, once alerted to the events outside, would likely destroy evidence before a warrant could be secured.
 

 “The amount of time necessary to obtain a warrant by traditional means has always been considered in determining whether circumstances are exigent.”
 
 McEachin,
 
 670 F.2d at 1146 (and cases cited therein). This is not a case where the police had ample time and opportunity to secure a search warrant, but decided to forego that option in the hope that exigent circumstances would arise.
 
 See United States v. Patino,
 
 830 F.2d 1413, 1417 (7th Cir.1987) (citation omitted) (“We have previously stated that ‘law enforcement officials may not deliberately wait for exigent circumstances to
 
 *1448
 
 arise and then exploit the exception to justify warrantless entry.’ ”);
 
 Rossetti,
 
 506 F.2d at 630. The police had sought a warrant at the earliest possible moment that it became apparent there was probable cause.
 
 United States v. Aquino,
 
 836 F.2d 1268, 1273-74 (10th Cir.1988). Their efforts were hampered by unrelated circumstances, a tragic shooting and general administrative delays. When exigent circumstances arose, strongly suggesting the destruction of evidence, there was no time to wait for the warrant.
 
 See United States v. Allison,
 
 639 F.2d 792, 794 (D.C.Cir.1980) (the difficulty in obtaining a search warrant is a factor that adds to the reasonableness of the decision to proceed without a search warrant).
 

 We also stress that the warrantless entry was limited in scope and proportionate to the exigency excusing the warrant requirement. Here, the officers who entered the Socey house did no more than “secure” the premises, to ensure that evidence would not be destroyed.
 
 See United States v. Agapito,
 
 620 F.2d 324, 335-36 (2d Cir.),
 
 cert. denied,
 
 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). The district court found that the “securing” officers postponed an actual search of the residence and seizure of property until the warrant had been signed by the judge and that fact was communicated to the officers on the scene. “There was no rummaging of drawers, etc., to cloud the purpose of the police.”
 
 Dorman v. United States,
 
 435 F.2d 385, 394 (D.C.Cir.1970) (en banc). The lower court’s finding on this issue is amply supported by the record.
 

 V
 

 The Soceys contend that the police improperly created the exigency by stopping the Camaro “unnecessarily and unreasonably” close to their house. They find it curious that, although the officers involved were “sensitive to the need to keep the police surveillance secret from the defendants,” Detective Brenner did not stop the Camaro away from Military Road, “where the inevitable commotion that surrounds an investigatory stop in a residential neighborhood would have been certain not to have alerted the defendants to the police presence.”
 

 In support, the Soceys focus on Detective Zattau's testimony at the suppression hearing. When Zattau was asked whether the Camaro could have been stopped five or six blocks from the Socey house, as easily as Soper’s Datsun had been detained, he replied affirmatively.
 

 It is true that police officers cannot deliberately create exigent circumstances to justify a warrantless entry into a private dwelling.
 
 United States v. Webster,
 
 750 F.2d 307, 327 (5th Cir.1984),
 
 cert. denied,
 
 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985);
 
 United States v. Thompson,
 
 700 F.2d 944, 950 (5th Cir.1983) (and cases cited therein). However, there is a key distinction between cases “where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances.”
 
 Webster,
 
 750 F.2d at 327. This case falls into the former category.
 

 We reject the Soceys’ claim that Detective Brenner’s decision to stop the Camaro was deliberate, in the sense that his underlying purpose was to subvert the warrant requirement. As an initial, factual matter, we note that the district court did not, in any sense, suggest that Brenner’s actions were designed to create a commotion or, more generally, to manufacture an exigency. At most, the court stated that the actions of the police were “possibly ill-advised.” The defendants’ contrary claims find no support in the record.
 

 Reviewing the totality of the circumstances, we find that Brenner’s decision to stop the Camaro was anything but “manufactured.” After Zattau and Hayes left their surveillance positions to pursue Sop-er’s Datsun, Brenner was faced with the incompatible duties of watching the house and stopping a departing automobile, possibly containing contraband, out of sight of the house. Under the circumstances, he did the best he could by stopping the car some distance from the house, but still in view to maintain his watch.
 

 
 *1449
 
 This case does not involve the kind of deliberate conduct that courts have found to constitute police creation of exigent circumstances. See, e.g., Thompson, 700 F.2d at 950-51 (undercover agent confronting suspect knowing that suspect will recognize him); United States v. Rosselli, 506 F.2d 627 (7th Cir.1974) (agents' knocking at apartment door and identifying themselves as police officers unnecessarily created emergency situation, especially since there was "no attempt to obtain a warrant" and "no consideration ... given to placing the defendant's apartment under surveillance while an attempt to secure a warrant was being made."); United States v. Curran, 498 F.2d 30 (9th Cir.1974) (~police officers contemplated warrantless search and seizure at the outset and made their presence known to occupants in order to create exigency).
 

 Perhaps Detective Brenner could have pursued a different course, less likely to expose the police presence to the occupants in the house. But this calculation, made in hindsight, is not relevant to our inquiry. Moreover, the police should not be taxed with having failed to cover every eventuality and to arrange a sufficiently broad dragnet to permit all persons leaving the house to be apprehended in perfect silence. As long as police measures are not deliberately designed to invent exigent circumstances, we will not second-guess their effectiveness.
 

 Because the police had an objectively reasonable belief that the destruction of narcotics was imminent, and thus they "could not brook the delay incident to obtaining a warrant," Dorinan, 435 F.2d at 392, they were justified in entering the Socey house without a warrant and securing the premises. Accordingly, the district court's suppression order is
 

 Reversed.
 

 [1]
 

 . The Soceys were indicted on one count of conspiracy to distribute marijuana and cocaine and to possess the same with intent to distribute, 21 U.S.C. § 846 (1982), one count of possessing cocaine with intent to distribute, 21 U.S. C. § 841(a), 18 U.S.C. § 2 (1982), one count of possessing marijuana with intent to distribute,
 
 ibid.,
 
 and one count of unlawfully maintaining a place for the purpose of storing and distributing marijuana and cocaine, 21 U.S.C. § 856 (1982). In addition, Robert Socey was charged with one count of interstate transportation of marijuana and cocaine, 18 U.S.C. §§ 1952 and 2 (1982).
 

 [2]
 

 . Zattau stated that he believed the warrant had been signed primarily because the conversations on the police radio indicated that a search team had been assembled for the Socey residence.
 

 [3]
 

 . Centrella had been delayed in securing a warrant. As the district court noted: “Preparation of the affidavit [in support of the warrant] was delayed because the officer preparing it and the other officers at headquarters became preoccupied on account of a tragic shooting of other officers of the unit in another part of the city.”
 

 [4]
 

 . By "plain view” the district court's order meant to exclude the evidence actually seen by the officers while securing the premises,
 
 and
 
 the evidence “more likely than not observed" and thus in the officers’ "constructive possession."
 

 [5]
 

 . Exigent circumstances justify a warrantless entry into a home only where there is also probable cause to enter the residence.
 
 United States v. Aquino,
 
 836 F.2d 1268, 1272 (10th Cir.1988);
 
 United States v. Howard,
 
 828 F.2d 552, 555 (9th Cir.1987);
 
 United States v. Cresta,
 
 825 F.2d 538, 553 (1st Cir.1987).
 
 See Arizona v. Hicks,
 
 — U.S. -, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987);
 
 Payton v. New York,
 
 445 U.S. at 587-89, 100 S.Ct. at 1380-82;
 
 United States v. Rubin,
 
 474 F.2d 262, 268 (3d Cir.),
 
 cert. denied sub nom. Agran
 
 v.
 
 United States,
 
 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973) (“Probable cause must exist to support
 
 any
 
 search."). The Soceys do not challenge the district court’s ruling that the police had probable cause to believe that evidence of criminal activity would be found in their home.
 

 [6]
 

 . By the same token, the police will have an objectively reasonable belief that evidence will be destroyed if they can show they reasonably believed "the possessors of the contraband [were] aware that the police [were] on their trail.”
 
 Rubin,
 
 474 F.2d at 268 (citation omitted).
 
 See, e.g., United States v. Aquino,
 
 836 F.2d 1268, 1273 (10th Cir.1988) ("The required release of these persons [suspected confederates] created the possibility that news of the arrests would reach others in the drug connection," thereby prompting the destruction of evidence.);
 
 United States
 
 v.
 
 Wulferdinger,
 
 782 F.2d 1473, 1476 (9th Cir.1986) (exigent circumstances justified war-rantless entry where confederate’s failure to return to premises, due to arrest, might cause those inside to dispose of evidence);
 
 United States v. Moore,
 
 790 F.2d 13 (1st Cir.1986) (same).