1998-NMCA-124

966 P.2d 176

**STATE of New Mexico, Plaintiff–Appellant,**

**v.**

**Tim WAGONER, Defendant–Appellee.**

**No. 18726.**

Court of Appeals of New Mexico.

July 20, 1998.

Certiorari Denied, No. 25,300, Aug. 27, 1998.

Tom Udall, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellant.

Phyllis Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellee.

## OPINION

HARTZ, Chief Judge.

{1} The State appeals the district court's order suppressing evidence seized from Defendant's residence. The district court held that a law enforcement officer had acted unlawfully when he conducted a warrantless "sweep" of the residence to look for persons who could destroy evidence or threaten the officer's safety. The court ruled that the officer had probable cause to believe that there was marijuana in the residence but that no exigent circumstances justified entering without a warrant. Although the officer later obtained a search warrant for the residence and seized evidence pursuant to the warrant, the district court suppressed the evidence because of the prior unlawful entry.

{2} On appeal the State contends that the warrantless entry was justified by the need to prevent the destruction of evidence. Alternatively, it contends that even if the original entry was unlawful, the warrant was supported by information obtained prior to the entry, so the evidence seized was not the fruit of the unlawful entry. We affirm the district court's decision that the original entry was unlawful. But we remand for the district court to determine whether the search warrant was the fruit of the unlawful entry.

## I. Background

{3} San Juan County Deputy Sheriff Scott Wehrman was eating Sunday dinner at a restaurant on April 27, 1997, when a waitress approached him with a tip. While working as a bus driver for the Aztec Public Schools, the waitress had noticed an unusually heavy amount of vehicular traffic coming and going from the residence located at 211 Hartman, near an Aztec elementary school. She expressed her belief that the traffic indicated illegal drug activity at the residence. After dinner Wehrman and Deputy Floyd Foutz went to the residence to investigate.

{4} The residence was a single-wide trailer, about 14 feet by 65 feet, surrounded by a waist-high chain link fence. As the deputies approached the door, Wehrman detected the odor of burning marijuana coming from an open window. When Wehrman knocked on the door, a voice responded, "Hang on a minute." Wehrman then heard what appeared to be running or the scuffling of feet inside the residence. Approximately one minute later Defendant opened the door. Wehrman smelled an even stronger odor of burning marijuana. Defendant, who was on crutches, and his thirteen-year-old son came to the door.

{5} Wehrman and Defendant had a conversation on the front porch that lasted a few minutes. Wehrman told Defendant that he had received a complaint of illegal drug activity and mentioned the odor of marijuana. Defendant denied that there was marijuana in the trailer. Wehrman repeatedly asked Defendant for consent to search the trailer, even asserting that he had the right to conduct the search. Defendant refused to consent, telling the deputies that they needed to get a warrant.

{6} Both Defendant and his son told Wehrman that there was no one else in the trailer. Moreover, after Defendant and his son came outside. Wehrman heard no more noise from within the trailer. Nevertheless, Wehrman entered the trailer to determine whether anyone else was inside. While walking through the trailer, he did not have his

gun drawn. In the master bedroom Wehrman noticed in plain view a triple-beam scale and several clumps of a green leafy substance.

{7} After checking out the trailer, Wehrman left to obtain a search warrant, while other deputies remained at the trailer. Wehrman's affidavit for the warrant recited what he had been told by the school bus driver, what he smelled upon approaching the trailer, what happened while he was outside the trailer, and what he observed while going through the trailer. On the basis of the affidavit a magistrate issued a search warrant. The search uncovered 300 grams of marijuana and baggies in various parts of the trailer.

{8} Defendant was charged with the distribution of marijuana in a drug-free school zone, a third degree felony. *See* NMSA 1978, Section 30–31–22(C)(1)(a) (1990). He moved to suppress the evidence. At the suppression hearing the parties stipulated to the testimony of the magistrate who issued the warrant. The sole live witness was Wehrman. The district court ruled that Wehrman was not justified in entering the trailer before obtaining the warrant. Although the court held that the warrant could have been issued with the information in the affidavit obtained prior to the entry, it suppressed all the evidence seized. The State appeals.

## II. Discussion

### A. The Initial Entry

{9} We begin by discussing the requirements of the Fourth Amendment to the United States Constitution. Although the Fourth Amendment constrains only the federal government, the Fourteenth Amendment imposes the same constraints upon the States. *See Elkins v. United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Before law enforcement officers can conduct a search, the Fourth Amendment ordinarily requires that they have not only probable cause, but also a warrant. *See Agnello v. United States*, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925). The chief function of the warrant requirement is to permit a judge to oversee the investigative activities of law enforcement officers. *See generally* Note, *Police Practices and the Threatened Destruction of Tangible Evidence*, 84 Harv. L.Rev. 1465, 1469–72 (1971). The fear is that enthusiastic law enforcement officers cannot satisfactorily assess probable cause. As stated by the Supreme Court, "In their understandable zeal to ferret out crime and in the excitement of the capture of a suspected person, officers are less likely [than judges] to possess the detachment and neutrality with which the constitutional rights of the suspect must be viewed." *Trupiano v. United States*, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948).

{10} The warrant requirement is of particular value in protecting the home from police intrusion. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

{11} Only a few exigent circumstances have been recognized by the Supreme Court as overcoming the warrant requirement. *See United States v. Sangineto–Miranda*, 859 F.2d 1501, 1511 (6th Cir.1988); 3 Wayne R. LaFave, *Search and Seizure* § 6.5(a) (1996). One is the threatened destruction of evidence. *See Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood alcohol); *Sangineto–Miranda*, 859 F.2d at 1511–12. But this exception must be closely constrained or the exception would become the rule. Not every possibility that evidence will be destroyed can justify warrantless entry of a residence. Courts have imposed several requirements.

{12} First, there must be a real possibility that evidence will be destroyed if law enforcement officers cannot enter the premises before they obtain a search warrant. A number of courts have followed the leading

case of *United States v. Rubin,* 474 F.2d 262, 268 (3rd Cir.1973), which states:

> When Government agents ... have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) reasonable belief that the contraband is about to be removed, (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, (4) information indicating the possessors of the contraband are aware that the police are on their trail, and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

(internal quotation marks and citations omitted). *See People v. Bennett,* 17 Cal.4th 373, 70 Cal.Rptr.2d 850, 949 P.2d 947, 954–55 (Cal.1998); 3 LaFave, *supra,* § 6 .5(b).

{13} Second, the exigency should not be one improperly created by law enforcement officers. *See United States v. Rosselli,* 506 F.2d 627, 630 (7th Cir.1974) (Stevens, J.); 3 LaFave, *supra,* § 6 .5(b), at 348–50. In particular, courts will not permit a warrantless entry if it appears that the officers have organized their conduct for the purpose of creating an exigency that presumably would justify a warrantless entry. *See United States v. Socey,* 846 F.2d 1439, 1448–49 (D.C.Cir.1988); *United States v. Howard,* 106 F.3d 70, 78 (5th Cir.1997).

{14} Third, any intrusion by law enforcement officers should minimize the imposition on privacy and possessory interests protected by the Fourth Amendment. *See Socey,* 846 F.2d at 1448; *United States v. Aquino,* 836 F.2d 1268, 1271 (10th Cir.1988).

Accordingly, officers should ordinarily limit themselves to taking steps to prevent the destruction or removal of evidence rather than actually searching for evidence. All that may be necessary is a sweep of the premises to see whether there is anyone present who could tamper with the evidence; those present could then be evicted or restrained. *See United States v. Straughter,* 950 F.2d 1223, 1228–31 (6th Cir.1991); *Socey,* 846 F.2d at 1448. On other occasions no entry would be necessary; the premises could be impounded from outside. *See Bennett,* 70 Cal.Rptr.2d 850, 949 P.2d at 954–57; 3 LaFave, *supra,* § 6.5(c); Note, *supra,* 84 Harv.L.Rev. at 1474–79.

{15} Although the search in this case is governed by the New Mexico constitutional provision on search and seizure, New Mexico Constitution Article II, Section 10, as well as the Fourteenth Amendment, New Mexico law is consistent with the above propositions. *Cf. State v. Duffy,* 1998–NMSC–014, ¶¶ 71–72, Vol. 37, No. 37, SBB 12 (discussing exigent circumstances). One case in point is *State v. Pool,* 98 N.M. 704, 652 P.2d 254 (Ct.App.1982). In *Pool* the manager of a hotel called the police to arrest and remove a trespasser. The manager and a police officer went to two rooms. After no one answered at the first room, the manager knocked on the door to the second room. When the defendant opened it, the officer smelled the odor of burning marijuana. The defendant, upon seeing the officer, closed the door, apparently to prevent the officer from entering the room. The officer then opened the door, entered the room, and found in plain view an alligator clip (which he believed was used for smoking marijuana) with a burned substance in the teeth of the clip. *See id.* at 705–06, 652 P.2d at 255–56. Citing *Rubin,* we upheld the warrantless entry and seizure of the alligator clip on the ground that the officer "could have had a reasonable, good faith belief that the defendant would immediately attempt to dispose of any marijuana he might have in his possession." *Id.* at 707, 652 P.2d at 257. In other cases we have recognized the exigent-circumstances exception to the warrant requirement but found no exigent circumstances present. *See, e.g., State v.*

*Corneau,* 109 N.M. 81, 89–90, 781 P.2d 1159, 1167–68 (Ct.App.1989).

{16} We now turn to the facts of the present case. We defer to the district court with respect to the finding of historical facts, so long as there is substantial evidence to support the findings. *See State v. Attaway,* 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994). The application of the law to those facts is a matter we review de novo. *See id.* Because the rules of criminal procedure do not require the district court to enter any findings of fact when ruling on a motion to suppress, we cannot be sure how the district court viewed the evidence before it. We will, however, indulge in reasonable presumptions in support of the district court's ruling. *See State v. Tywayne H.,* 1997–NMCA–015, ¶ 5, 123 N.M. 42, 933 P.2d 251.

{17} We hold that the evidence before the district court supports the determination that Wehrman's entry of the trailer was not justified by exigent circumstances. The district court could rationally find that the officers on the scene lacked a reasonable basis for believing that evidence in the trailer could be destroyed during the time it took to get a search warrant.

{18} Before explaining our conclusion, we note our rejection of one argument raised by Defendant. He contends that exigent circumstances did not justify the warrantless entry because the deputies could have left to seek a search warrant when they smelled marijuana as they approached the trailer, before they knocked on the door and tipped off those inside that they were there. In our view, however, the deputies were not required to leave the premises to seek a warrant as soon as they smelled marijuana. Although, as previously stated, we will not uphold a warrantless entry arising from exigent circumstances that result from law enforcement efforts to avoid the warrant requirement by creating such circumstances, that was not the situation here. There is no evidence in the record that the deputies anticipated that they would detect the odor of marijuana when they arrived outside the trailer. The natural, and reasonable, reaction of law enforcement officers in that situation would be to investigate promptly by questioning the inhabitants of the residence. We will not ascribe to such "instinctive" behavior an intent to create circumstances that would excuse the warrant requirement. *See Socey,* 846 F.2d at 1448–49. Moreover, once the uniformed deputies had parked their vehicles at the premises and walked up to the door of the trailer, they could hardly be confident that they were undetected. Courts have justified warrantless entry because of the reasonable possibility that the occupants of a dwelling are aware that law enforcement officers have focused their attention on them. *See Socey,* 846 F.2d at 1447; *Howard,* 106 F.3d at 76–77.

{19} Thus, the issue becomes whether at the time of Wehrman's entry of the trailer there was an objectively reasonable basis for believing that someone in the trailer could destroy evidence while the deputies sought a search warrant. *See Straughter,* 950 F.2d at 1230–31. The odor of marijuana gave the deputies probable cause to believe that evidence of crime was within the trailer. *See Pool,* 98 N.M. at 706, 652 P.2d at 256. Was there, however, a reasonable basis for believing that there was someone in the trailer after Defendant and his son had stepped outside? Wehrman testified that he heard "a lot of running footsteps" after he knocked on the door; but that noise could readily be accounted for by the presence of Defendant and his son. More importantly, although the deputies did not need to believe Defendant and his son when they stated that there was no one else in the trailer, they heard nothing indicating the presence of a third person after the door was opened. Given the small size of the trailer, that absence of noise was significant. Moreover, only one car was parked at the trailer. In addition, the district court may well have believed that Wehrman's own conduct (including the length of his conversation before entering the residence and his failure to have his gun drawn while conducting the sweep) indicated that he was not aware of substantial evidence to believe that a third person was still in the trailer.

{20} Two further considerations are also important here. First, even if there was a third person in the trailer, it is questionable whether such a person could have succeeded in destroying the evidence before a warrant was obtained. As previously noted, the trailer was a small one. The district court could have reasoned that a deputy stationed at the open front door—while another deputy left to seek a warrant—could likely hear any significant movement in the trailer. Upon hearing such movement, the deputy would be justified in entering the trailer to investigate, and prevent tampering with evidence.

{21} The second consideration is difficult to evaluate precisely but could be determinative in some circumstances. "[The United States Supreme] Court has ... made clear that the exigent-circumstances exception in the context of a home entry 'should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed.' " *Sangineto–Miranda*, 859 F.2d at 1511 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)). Although *Welsh* involved an offense that was not a crime under state law, the opinion suggests that the evidence supporting the need for a warrantless entry should be stronger when the suspected crime is a misdemeanor than when it is a felony. *See Aquino*, 836 F.2d at 1271–72. Here, although the bus driver had expressed a belief that felonies (distribution of marijuana in a school zone) were being committed in the trailer, probable cause existed only for the offense of simple possession of marijuana, a misdemeanor, *see* NMSA 1978, § 30–31–23(B) (1990). In this circumstance the district court could properly require a showing of a more substantial probability that a third person was present in the trailer.

{22} Thus, although we cannot be certain what historical facts were found by the district court, a reasonable view of the evidence supports the district court's determination that the warrantless entry was not justified by exigent circumstances. *See Tywayne H.*, 1997–NMCA–015, ¶ 5, 123 N.M. 42, 933 P.2d 251.

## B. Inevitable Discovery

{23} As an alternative basis for reversal, the State contends that the evidence seized from the trailer should be admissible under the inevitable-discovery exception to the exclusionary rule. Under this exception, evidence obtained after a defendant's rights have been violated is nevertheless admissible if the evidence would inevitably have been obtained by law enforcement officers even if there had been no violation of the defendant's rights. *See State v. Johnson*, 1996–NMCA–117, ¶ 19, 122 N.M. 713, 930 P.2d 1165; *Corneau*, 109 N.M. at 90–91, 781 P.2d at 1168–69; *Straughter*, 950 F.2d at 1231; *Bennett*, 70 Cal.Rptr.2d 850, 949 P.2d at 960–62 (Brown, J. concurring). The State points out that the officers obtained a search warrant for the trailer and that the affidavit for the warrant established probable cause even without consideration of the portions of the affidavit describing what Wehrman discovered during his warrantless entry of the trailer.

{24} These facts, however, cannot suffice in themselves to establish that the evidence would inevitably have been discovered. The State must establish that (1) law enforcement officers would have sought the search warrant for the trailer even if Wehrman had not encountered any evidence during his sweep of the trailer and (2) the magistrate would in fact have issued the warrant even if the affidavit had not contained recitals concerning what Wehrman found during the sweep. *See Murray v. United States*, 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Both propositions may well have been true. The district court stated during the hearing that it would have issued a warrant based on the information obtained prior to the warrantless entry. Also, Wehrman testified that the purpose of his sweep was to secure the trailer prior to his seeking a warrant, thus indicating that he had made up his mind to seek a warrant.

{25} Nevertheless, we are reluctant to make the necessary fact findings ourselves on the record before us. The district court is in a better position than we are to determine whether the magistrate (not the district judge himself) would have issued a warrant based on the information obtained prior to

**16**

the entry and also to determine the credibility of the deputy in stating his intentions. Unfortunately, however, the district court made no findings, oral or written, regarding these issues. When the prosecutor began to argue for application of the inevitable-discovery exception, the district court cut him off by expressing its disapproval of the exception. Consequently, we must remand to the district court to determine whether the inevitable-discovery exception applies to this case.

### III. Conclusion

{26} We affirm the district court's decision that the warrantless entry of Defendant's trailer was an unconstitutional intrusion. We reverse and remand to the district court, however, for it to determine whether the evidence seized from Defendant's trailer should be admitted under the inevitable-discovery exception.

{27} **IT IS SO ORDERED.**

ALARID and WECHSLER, JJ., concur.