This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                     **NO.   27,606**

**DARLENE TANNER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas Hynes, District Judge**

Gary K. King, Attorney General
Katherine Zinn, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Joseph P. Walsh, Assistant Public Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Defendant appeals her convictions for one count of driving while intoxicated (fourth offense) ("DWI") and one count of child abuse, not resulting in death or great bodily harm, raising six issues on appeal. We affirm.

**BACKGROUND**

The material facts leading up to the initial stop of Defendant's vehicle are not in dispute. A dispatch call was made to police by a citizen-informant at a convenience store. The citizen-informant told the dispatcher that Defendant appeared intoxicated. Based on the call, the police dispatcher sent out an "attempt to locate" bulletin ("ATL") providing a description of the vehicle and the driver and stating that the driver was suspected of DWI. Officers Calkins, Clark, and Webb responded to the ATL, but Sergeant Webb was the officer who initially stopped Defendant's vehicle in a convenience store parking lot. Deputy Calkins was the field training officer supervising Deputy Clark, and the two were riding in the same vehicle.

None of the officers testified that the dispatch included information regarding the facts giving rise to the caller's suspicion that Defendant was intoxicated. After stopping the vehicle based on the ATL, Deputy Clark discovered that Defendant displayed signs of intoxication. After administering field sobriety tests, Defendant was arrested and later charged with DWI (over .08) or, in the alternative, based on

impairment "to the slightest degree," one count of child abuse not resulting in death or great bodily harm, and three other counts that were later dismissed.

Defendant filed a motion to suppress and a motion in limine to exclude the results of the blood alcohol tests ("BAT"); both motions were denied. After a jury trial, Defendant was convicted of DWI and child abuse not resulting in death or great bodily harm. This appeal followed. Additional facts are incorporated in the following discussion where necessary.

## I.    PROPRIETY OF STOP

Defendant contends that all of the evidence should be suppressed because the officers had insufficient information to justify a stop of her vehicle. She claims that even if the informant gave the dispatcher sufficient information to establish reasonable suspicion that she was committing the offense of DWI, that information was not communicated to the officers and thus they lacked sufficient facts to justify stopping her. Defendant also claims that presentation of the evidence justifying the stop violated her constitutional right to confront her accuser. This contention is discussed in detail following  analysis of the propriety of the stop.

## STANDARD OF REVIEW

In reviewing the district court's denial of a motion to suppress, we determine "whether the law was correctly applied to the facts, viewing them in a manner most

3

favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.* However, we "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286. In this case, the district court did not enter any formal factual findings or conclusions of law. Therefore, we will employ all reasonable presumptions in support of the district court's ruling. *See Jason L.*, 2000-NMSC-018, ¶ 11.

**DISCUSSION**

When an officer stops an automobile to investigate a possible crime, we analyze the reasonableness of the stop and ensuing investigatory detention in accordance with the two-part test in *Terry v. Ohio*, 392 U.S. 1 (1968). *See State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836. We ask whether the stop was justified at its inception and whether the officer's actions during the stop were reasonably related to circumstances that justified the stop. *Id.* In order for the stop to be justified at its inception, "[t]he officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity." *State v.*

4

*Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Jason L.*, 2000-NMSC-018, ¶ 20. When officers stop a suspect pursuant to a tip, we consider the totality of the circumstances to determine whether the tip was sufficiently reliable to provide police with reasonable suspicion that a crime "was being or was about to be committed," or whether the tip was sufficient to indicate the possibility of danger to the public thus justifying an investigatory stop. *Contreras*, 2003-NMCA-129, ¶ 7.

At the suppression hearing, Defendant conceded that the informant identified herself to the dispatcher by name, and informed the dispatcher that she was a convenience store clerk who had refused to sell alcohol to Defendant because Defendant appeared to be intoxicated and that she witnessed Defendant driving away from the store. Despite the information provided to the dispatcher, the officers testified that they were not given any factual details as to the nature of the complaint or a description of driving; the dispatcher only reported the conclusion that the driver was suspected of DWI and identified Defendant's car by description and license plate number.

Defendant contends that the stop was not justified because none of the officers claimed to have any information regarding the facts supporting the suspicion that

5

Defendant was committing a DWI; instead, the officers improperly relied on information which accurately described the suspect and her vehicle but which failed to provide a factual description of the alleged crime. We disagree.

Even though no facts were provided to support the informant's suspicion that Defendant was intoxicated, officers were justified in making the stop due to the exigent circumstances presented by a possibly intoxicated driver and due to the identifying information provided by the informant and conveyed by the dispatcher. *See id.* ¶ 21 (holding that, under the totality of circumstances, the officer's stop of the defendant's vehicle was reasonable in light of the "exigency of the possible threat to public safety that a drunk driver poses," and given that the tip was provided by "a reliable concerned motorist" and that the information was sufficiently detailed to allow the officer to "find the vehicle in question and confirm the description"); *State ex rel. Taxation & Revenue Dep't Motor Vehicle Div. v. Van Ruiten*, 107 N.M. 536, 538-39, 760 P.2d 1302, 1304-05 (Ct. App. 1988) (applying the standard used in criminal cases and concluding that the officer had reasonable suspicion justifying the stop when the dispatcher provided him with information that someone had called and reported seeing a very intoxicated person leaving a store and describing the vehicle and the direction of travel).

Defendant cites to *Florida v. J.L.*, 529 U.S. 266 (2000), to support her contention that officers were not justified in relying on the information conveyed by the dispatcher. In *J.L.*, officers relied on an anonymous tip that a person was carrying a gun to justify a search of the defendant. *Id.* at 268. The tip came from an unknown person at an unknown location. *Id.* at 270. The Supreme Court held that the search violated the defendant's Fourth Amendment rights because the call provided "no predictive information," and therefore the police had no means to test the informant's knowledge or credibility. *Id.* at 271.

We are unpersuaded that *J.L.* warrants reversal in this case given that this Court has previously considered and rejected the same argument in *Contreras*. *See Contreras*, 2003-NMCA-129, ¶¶ 3, 6, 16-21. In rejecting the defendant's argument in *Contreras*, this Court noted the significant number of cases from other jurisdictions decided after *J.L.* and holding that a tip that provided sufficient information to reliably identify the car, provided sufficient justification to allow officers to make the stop. *Contreras*, 2003-NMCA-129, ¶¶ 9, 17-21 (recognizing the holding in *J.L.*, but then holding that officers were justified in making the stop because the facts "allow[ed an] inference that the anonymous caller was a reliable concerned motorist; the information given was detailed enough for the deputies to find the vehicle in question and confirm the description; and the caller was an apparent eyewitness to the erratic driving").

7

In *Contreras*, the informant was an anonymous citizen who was an eyewitness to the erratic driving, which lent credibility to the anonymous claim. *Id.* ¶ 12. In this case, the informant lent credibility to her claim by identifying herself by name and as a convenience store employee and telling the dispatcher that she personally observed Defendant's intoxicated behavior. An informant such as the one in this case is considered to be more reliable than other types of informants and thus subject to less stringent credibility verification requirements because such informants have nothing to gain by providing false information. *See id.* ¶ 10. Moreover, in contrast to the circumstances underlying the search in *J.L.,* this case involves "a moving car on a public roadway [which] presents an exigent circumstance that a possessory crime does not[;] . . . it is the imminent threat to public safety that distinguishes th[is] case[] from *J.L.*" *Contreras*, 2003-NMCA-129, ¶ 15. Finally, a brief investigatory stop such as the one in this case is "less intrusive than the pat-down search at issue in *J.L.*" *Id.* ¶ 16.

Finally, we disagree that reversal is warranted based on this Court's decision in *State v. Moore*, 2008-NMCA-056, 144 N.M. 14, 183 P.3d 158. **[BIC 16-17]** In *Moore*, this Court found that a warrantless search of a residence was not justified by exigent circumstances. *Id.* ¶¶ 14-16 (holding that exigent circumstances justifying warrantless entry into a residence were not presented by an ammonia leak in a garage

that was thirty to forty feet away from the residence in the absence of sufficient, particularized, articulable facts suggesting that individuals in the residence were incapacitated). However, the facts underlying the search in *Moore* are more similar to those presented in *J.L.* than to those presented in *Contreras* or this case because *Moore* does not concern the exigent circumstances presented by a potential drunk driver on a public roadway. *See Contreras*, 2003-NMCA-129, ¶¶ 15-16, 21; *cf. State v. Rowell*, 2008-NMSC-041, ¶¶ 28-35, 144 N.M. 371, 188 P.3d 95 (reversing the Court of Appeals and holding that the officer's warrantless search of the defendant's vehicle was justified by the exigent circumstances presented once the defendant admitted that he had a shotgun in the vehicle that was on school premises).

Based on the foregoing, we affirm the denial of Defendant's motion to suppress based upon her challenge to the initial stop.

9

## II.    CONFRONTATION CLAUSE

Defendant contends that she was entitled to a new suppression hearing because her right to confrontation was violated when she was unable to confront the citizen-informant, her primary accuser, during the suppression hearing.  She notes that the informant provided all of the information justifying the stop, and then claims that she was deprived of her constitutional right to confront this witness "whose testimony would either confirm or dispel the existence of reasonable suspicion."  We disagree.

**STANDARD OF REVIEW**

"Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo."  *State v. Dedman*, 2004-NMSC-037, ¶ 23, 136 N.M. 561, 102 P.3d 628; *see State v. Romero*, 2006-NMCA-045, ¶ 12, 139 N.M. 386, 133 P.3d 842, *aff'd* 2007-NMSC-013, 141 N.M. 403, 156 P.3d 694.

**DISCUSSION**

It is undisputed that the information obtained from the citizen-informant was used only for purposes of justifying the stop; she was not a witness at trial and did not testify or present evidence against Defendant.  Therefore, we are unconvinced that Defendant's right to confrontation was triggered and we are unpersuaded by Defendant's citation to out-of-state authority supporting the proposition that a defendant is entitled to confront eyewitnesses whose statements are presented at trial

10

through the testimony of the investigating officer. *See State v. Rivera,* 2008-NMSC-056, ¶¶ 18, 22-23, 144 N.M. 836, 192 P.3d 1213 (noting that recent Supreme Court cases continue to focus on the protections that must be afforded a defendant at trial and holding that an accused does not have a Sixth Amendment right to confront and cross-examine witnesses at a pretrial hearing on a motion to suppress evidence).

Finally, Defendant claims that even though the informant's statements were not introduced at trial, the right to confrontation is a pre-trial right. *See State v. Hensel*, 106 N.M. 8, 738 P.2d 126 (Ct. App. 1987). We disagree and note that *Hensel* was expressly overruled by our Supreme Court in *Rivera*. *See Rivera*, 2008-NMSC-056, ¶ 22 (stating that "the Hensel opinion does not reflect current confrontation clause jurisprudence and is of no current value to our courts. It is hereby overruled").

III.   ADMISSION OF BAT RESULTS

Defendant claims that the district court abused its discretion in admitting the BAT results into evidence because Deputy Calkins, the operator of the machine used to test her, did not comply with the regulation of the Scientific Laboratory Division of the Department of Health ("SLD"), which requires the officer administering the breath test to first "ascertain[] that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample." 7.33.2.12(B)(1) NMAC (03/14/01). She further contends that the results were

improperly admitted because the State failed to make a threshold showing that the machine used to test Defendant, the Intoxilyzer 8000 ("breath machine") was properly certified.

**STANDARD OF REVIEW**

We review the district court's decision on whether to admit the results of the BAT for abuse of discretion. *State v. Willie*, 2008-NMCA-030, ¶ 5, 143 N.M. 615, 179 P.3d 1223, *rev'd on other grounds,* 2009-NMSC-037, __ N.M. __, __P.3d __ (No. 30,909, June 24, 2009). Interpretation of a regulation is subject to de novo review. *Willie*, 2009-NMSC-037, ¶ 9. Once a defendant objects, the district court abuses its discretion if it admits evidence when the foundational requirements have not been established. *See Willie*, 2008-NMCA-030, ¶ 5. In determining whether BAT results are admissible, the district court needs to find by a preponderance of the evidence that foundational requirements have been met. *See Willie*, 2009-NMSC-037, ¶ 8; *State v. Martinez*, 2007-NMSC-025, ¶¶ 10-11, 21, 141 N.M. 713, 160 P.3d 894.

**DISCUSSION**

Deputy Clark was not a certified operator of the breath machine, so the BAT was administered by Deputy Calkins. Even though Deputy Calkins performed the test, Deputy Clark observed Defendant during the twenty-minute observation period.

Defendant claims that the BAT results were improperly admitted because Deputy Calkins, the officer administering the test, failed to "ascertain" that Defendant had nothing to eat, drink, or smoke for twenty minutes prior to the test as required by 7.33.2.12(B)(1) NMAC. She claims that Deputy Calkins delegated the "non-delegable duty" to ascertain whether she had been deprived of food, drink, or smoking materials for twenty minutes to an "unqualified individual" because Deputy Calkins did not remember what steps, if any, were taken to ensure that Defendant had nothing to eat, drink or smoke during the twenty-minute period.

Deputy Clark testified that he conducted the twenty-minute deprivation period. He testified that he arrested Defendant at 7:44 p.m., handcuffed her hands behind her back, asked her if she had anything in her mouth, searched her to confirm she had nothing on her person, and asked her to open her mouth so he could confirm that it was empty. He testified that he then placed her in the back of the patrol car where she remained until they arrived at the substation at 8:11 p.m. At that point, Defendant was escorted into the "intox" room where she remained in the presence of Deputies Clark

13

and Calkins until the BAT commenced at 8:15 p.m.  Based upon this testimony, the district court could conclude by a preponderance of the evidence that Deputy Clark ascertained that Defendant had nothing to eat, drink, or smoke during the twenty-minute observation period before the first BAC.  *Cf. Willie*, 2009-NMSC-037, ¶¶ 12-13, 16 (reversing the Court of Appeals which required that the officer ask and check whether a suspect has something in his or her mouth, interpreting the ascertainment regulation as allowing a BAT operator to use a variety of methods and means "to determine that a DWI suspect has had nothing to eat, drink, or smoke during the deprivation period," and stating that no specific action on the part of the BAT operator is required).

Even though Deputy Clark was the officer who ensured compliance with the requisite deprivation period, there is nothing in the regulations requiring that the officer who observes a suspect for twenty minutes prior to the test, be the same officer who administers the test and nothing precludes the testing officer from delegating the duty regarding the deprivation period to another officer.  Instead, it is only necessary that the person administering the test ascertain through a reliable means that the suspect has had nothing to eat, drink, or smoke for twenty minutes prior to the test.  *Id.* ¶ 14 (holding that the BAT operator may use a variety of means at their disposal

14

to determine that the subject has had nothing to eat, drink, or smoke "on an individualized, case-by-case basis").

Deputies Clark and Calkins testified that they were near Defendant during the entire deprivation period. Furthermore, Deputy Calkins testified that he knew Deputy Clark had been trained to conduct the deprivation period and it was Deputy Calkins' role to ensure that Deputy Clark correctly performed his duties. Based upon the testimony of Deputies Clark and Calkins, taken as a whole, the district court could find by a preponderance of the evidence that Deputy Calkins ascertained that Defendant had nothing to eat, drink or smoke for at least twenty minutes before he administered the tests because Deputy Calkins and the court could rely on Deputy Clark's actions in observing Defendant to insure that the purpose of the regulation has been met—that Defendant have nothing to eat, drink, or smoke for at least twenty minutes before the first BAT is administered. *Cf. Willie*, 2009-NMSC-037, ¶¶ 12, 16 (noting that "ascertain" suggests the need "to make a determination to some degree of certainty [but it] does not address the *manner* in which such a determination is made"); *State v. Rivera*, 1997-NMCA-102, ¶ 4-5, 124 N.M. 211, 947 P.2d 168 (holding that the purpose of the twenty-minute observation period could be satisfied by testimony showing that the officer was sitting in the car with the defendant because the purpose is "to insure that a defendant does nothing to compromise the test").

15

Defendant also argues that the BAT results were inadmissible because the State failed to establish that the breath machine was properly certified. Defendant claims that at trial, Deputy Calkins admitted that he had no knowledge as to whether the machine was certified. She claims that she challenged the certification of the machine both orally and in writing before trial. She admits that the State provided proof as to certification of the machine by providing a copy of the certification documents during discovery, but claims that she could not determine if the machine was properly calibrated absent an affirmative showing of proper calibration by the State, and that the certification documents alone are insufficient unless someone testifies as to certification.

Defendant is correct that even though the State establishes the foundational requirement of certification by introducing testimony or documentation, she may challenge the admissibility of the BAT by introducing evidence calling into doubt the validity of the certification. *See Martinez*, 2007-NMSC-025, ¶¶ 23-25 (holding that the officer's testimony that he saw the SLD certification sticker on the machine was sufficient to meet the foundational requirement of proper certification by a preponderance of the evidence but also observing that a defendant may still challenge the reliability of BAT results by seeking discovery to provide information to be able to "critically challenge an officer's foundational testimony concerning certification").

16

However, we disagree with Defendant's contention that alerting the State that certification is challenged is all that is necessary to require the State to show certification with a "proper foundational witness."

After the State produced the documents establishing certification, Defendant put forth nothing to challenge the State's foundational proof that the machine was properly certified except for unsupported allegations that live testimony was necessary to avoid reliance on the hearsay that was purportedly contained in the certification document. This is insufficient to call the State's foundation proof into doubt or to require the State to produce additional proof. *See State v. Granillo-Macias*, 2008-NMCA-021, ¶ 20, 143 N.M. 455, 176 P.3d 1187 (accepting the district court's observations that the SLD maintains the breath machines in accordance with certain rules and regulations, the certification information is available for review by defendants to ensure the veracity of certification documents, and unless evidence appears to the contrary to challenge the veracity of the documents, the officer's testimony that a machine had a proper, valid certification certificate is sufficient to establish a presumption that the machine is operating correctly).

## IV. PROSECUTORIAL MISCONDUCT

Defendant contends that the district court abused its discretion in permitting the State to argue in closing that the ATL was based on a suspected DWI when no witness

testified about suspecting Defendant of DWI prior to the stop and when Defendant could not cross-examine any such witness as to the credibility of the suspicion of DWI. *See State v. Duffy*, 1998-NMSC-014, ¶¶ 46-47, 126 N.M. 132, 967 P.2d 807 (stating that a trial court's rulings on prosecutorial misconduct are reviewed for abuse of discretion), *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828.

Before trial, the district court granted Defendant's motion in limine prohibiting the State from making any reference to the fact that the ATL was related to a possible DWI or reference to any statements made by the informant that Defendant was driving impaired because such information would be hearsay and also violate Defendant's rights under the Confrontation Clause. During closing arguments, the prosecutor made reference to the stop being pursuant to an ATL of a suspected DWI. At trial, Defendant objected claiming "facts not in evidence" because such statements were excluded by the district court's pre-trial ruling and because he believed that no witness testified regarding any suspicion of DWI prior to the stop. *See State v. Diaz*, 100 N.M. 210, 213-14, 668 P.2d 326, 329-30 (Ct. App. 1983) (stating that, during closing "a prosecutor must confine himself to the facts introduced in evidence and to the fair and reasonable inferences to be drawn therefrom"). The court overruled Defendant's objection.

Defendant contends that the prosecutor's statement was not based on evidence introduced at trial and that it was so prejudicial and such egregious misconduct that it warrants a new trial. *See Duffy*, 1998-NMSC-014, ¶¶ 46-47 (stating that prosecutorial misconduct may warrant a new trial if it is "so egregious" and "had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial"). We disagree.

In Defendant's opening statement, she conceded that the State's evidence could prove that she was driving while intoxicated by stating an expectation that the evidence would show she was driving while intoxicated including evidence of standardized field sobriety tests, bloodshot, watery eyes, and alcohol in the car. She reiterated this concession during closing by instructing the jury to only "convict her of what she's guilty of, convict her of the DUI." Moreover, during trial, Defendant did not object when Sergeant Webb testified that he received an ATL "reference possible DWI." Therefore, the prosecutor's comments did not introduce facts that were not in evidence. *See id.* ¶ 59.

Finally, to whatever extent Defendant might claim that her failure to object to Sergeant Webb's testimony should be excused because that testimony combined with the prosecutor's comments were so prejudicial as to constitute fundamental error, we again disagree. Given Defendant's own statements during opening and closing, we

are not persuaded that the State's actions in referring to the possible DWI as a basis for the ATL or Sergeant Webb's statement prejudiced Defendant's case. *See In re Ernesto M.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (stating that "[a]n assertion of prejudice is not a showing of prejudice"); *State v. Fernandez*, 117 N.M. 673, 676, 875 P.2d 1104, 1107 (Ct. App. 1994) ("In the absence of prejudice, there is no reversible error.").

**V.   SUFFICIENCY OF THE EVIDENCE FOR CHILD ABUSE**

Last, Defendant contends there was insufficient evidence to support her conviction for child abuse not resulting in death or great bodily harm. Specifically, she argues that there was no evidence presented to show that the children in the vehicle were under the age of eighteen, or the identities of the children as set forth in the jury instructions.

**STANDARD OF REVIEW**

We review the evidence introduced at trial to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *See State v. Apodaca*, 118 N.M. 762,

765-66, 887 P.2d 756, 759-60 (1994). We do not reweigh the evidence or substitute our judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

**DISCUSSION**

To convict Defendant of child abuse not resulting in death or great bodily harm, the jury had to find, beyond a reasonable doubt, that Defendant "caused Tracy Tanner, Raymond Tanner, and Ilene Tanner," to be placed in a situation that endangered their life or health and that "Tracy Tanner, Raymond Tanner, and Ilene Tanner were under the age of 18." *See State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) (observing that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured").

Defendant contends that the State failed to prove that the occupants of the car were children under eighteen years of age. She notes, correctly, that the children were never named at trial, and there was no testimony as to their ages. She also claims that the only evidence on which the State could rely was a "mention by the officer that there were 'juveniles' in the car." We disagree that this is the only evidence supporting the element that Defendant's juvenile children were in the car. We now turn to the evidence in support of the conviction.

21

Sergeant Webb, who initially stopped the vehicle, testified that there were five other occupants including a "four year old girl [in the] front passenger seat." Defendant objected, and the court sustained the objection stating that the officer had to lay a foundation as to how he knew the age. Sergeant Webb then testified that another female juvenile was found directly behind the driver's seat and a juvenile boy was in the back. He also testified that he stayed on the scene until the children's father took them home, and he remained on the scene until the father arrived to "take custody of the children."

In addition to Sergeant Webb's testimony, a videotape of the interaction between Defendant and the police was played to the jury. On the videotape, Defendant is asked who is in the car with her, and she responds "my children," and someone can be heard saying "mommy, mommy." An officer is then heard to say "[w]e'll get a[]hold of their dad, okay?" Later, an officer asked Defendant if her husband can pick up the car and the kids, and she says yes. After playing the tape, the State asked the arresting officer, Deputy Clark, "did you observe the children in the vehicle?" and he responded "yes."

Based upon this testimony and the videotape, the jury could conclude beyond a reasonable doubt, that Defendant "caused Tracy Tanner, Raymond Tanner, and Ilene Tanner," to be placed in a situation that endangered their life or health and that "Tracy

22

Tanner, Raymond Tanner, and Ilene Tanner were under the age of 18," in order to convict Defendant of one count of child abuse not resulting in great bodily harm. *See State v. Cunningham*, 2000-NMSC-009, ¶ 29, 128 N.M. 711, 998 P.2d 176 (stating that circumstantial evidence may be sufficient to uphold a conviction); *cf. State v. Barber*, 2004-NMSC-019, ¶ 33, 135 N.M. 621, 92 P.3d 633 (affirming the defendant's conviction because the state presented enough circumstantial evidence

to support all of the inferences necessary for the jury to find the essential elements of the crime beyond a reasonable doubt).

**CONCLUSION**

As the stop and investigation of Defendant were justified, Defendant was not entitled to a suppression of the evidence obtained as a result of the stop. We affirm the denial of Defendant's motion to suppress and affirm her convictions.

**IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**LINDA M. VANZI, Judge**