801 P.2d 117

STATE of New Mexico,
Plaintiff–Appellee,

v.

Denver Elwood CALLOWAY,
Defendant–Appellant.

No. 11625.

Court of Appeals of New Mexico.

Oct. 2, 1990.

Certiorari Denied Nov. 19, 1990.

Hal Stratton, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Jerry Todd Wertheim, Asst. App. Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals his convictions for trafficking in a controlled substance by manufacturing and possession of drug paraphernalia. Defendant challenges the trial court's denial of his motion to suppress evidence and seeks a new trial. The question presented by this case is whether the evidence sought to be suppressed was seized during the course of an unreasonable search in violation of the United States and New Mexico Constitutions. *See* U.S. Const.Amend. IV; N.M. Const. art. II, § 10. We affirm.

## FACTS

On December 31, 1987, the Albuquerque Fire Department responded to a fire at defendant's residence. A fire department arson investigator, Floyd Gonzales, was dispatched to the scene to investigate the cause of the fire at what was believed to be a possible methamphetamine lab. When Gonzales arrived, police were in the process of evacuating the area since it was determined that hazardous chemicals might be in the house. Upon entering the building, Gonzales observed burners, vials, and glassware normally found in a lab. Continuing his investigation, he noticed more hot plates and glassware, as well as chemicals and handguns, in the bedroom of the house.

Gonzales was unable to determine if the chemicals at the scene constituted a hazard because he was not a hazardous material specialist. He requested that a police department impact team and chemist be called to the scene. Officer William Griego of the Valley Impact Team arrived before the chemist. The arson investigator informed Officer Griego of what he had seen. Both men then walked through the house, and Gonzales pointed out the lab equipment, chemicals, and handguns to Officer Griego.

Officer Griego was familiar with the chemicals used to manufacture methamphetamine and knew them to be potentially hazardous. He was not trained to handle such chemicals and, therefore, waited for the police chemist to arrive. Upon his arrival, the chemist informed Officer Griego that the scene was not safe for further sampling of the chemicals and instructed Officer Griego to have the chemicals removed to a police department warehouse. In addition to seizing the chemicals, Officer Griego seized the glassware and handguns which he saw during his initial entry of the building. Before leaving, Officer Griego also seized a briefcase found at the scene of the fire.

## DISCUSSION

Defendant argues that the trial court erred by not suppressing the glassware, handguns, briefcase, and its contents pur-

suant to SCRA 1986, 5–212. We will discuss the seizure of the briefcase and its contents separately from the seizure of the rest of the evidence. As both parties recognize, a reviewing court will review the "propriety of the trial court's ruling [on a motion to suppress] against all of the evidence produced at trial rather than just that which was presented at the suppression hearing." *State v. Padilla*, 95 N.M. 86, 87, 619 P.2d 190, 191 (Ct.App.1980).

"On appeal, a trial court's denial of a motion to suppress will not be disturbed if supported by substantial evidence, unless it also appears that the determination was erroneously premised." *State v. Warren*, 103 N.M. 472, 475, 709 P.2d 194, 197 (Ct. App.1985) "We view the evidence in a light most favorable to the trial court's ruling, indulging all inferences in support of that ruling, and disregarding all evidence to the contrary." *Id.*

The trial court based its denial of defendant's motion on the ground that the presence of possibly hazardous chemicals provided the exigent circumstances necessary for a warrantless entry of defendant's residence. Once lawfully within the residence, the trial court concluded that seizure of the glassware and handguns was lawful because they were in plain view. The trial court also determined that the exigencies of the situation permitted Officer Griego to open the briefcase without a warrant to search for other weapons or explosives.

■ The United States Supreme Court set the parameters for lawful searches of fire-damaged residences in *Michigan v. Clifford*, 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984). In *Clifford*, the court stated that if reasonable privacy interests remain in the fire-damaged property, a search must be conducted pursuant to a warrant absent consent or exigent circumstances. *Id.* at 292–93, 104 S.Ct. at 646–47. The court held that a search to determine the cause and origin of a fire presents a sufficient exigency to justify a warrantless search of the premises. *Id.* Evidence of criminal activity, the court went on to say, may be seized under the plain view doctrine during the course of a cause and origin

search. *Id.* at 294, 104 S.Ct. at 647. The court also stated that a cause and origin search does not justify a search to gather evidence of criminal activity without a warrant once the cause and origin of the fire are determined. *Id.* We note at the outset that the state concedes defendant had reasonable privacy interests in the residence. At trial, defendant did not challenge the right of Floyd Gonzales, the fire department arson investigator, to inspect the premises, but argued that the subsequent inspection by Officer Griego was an unreasonable search and seizure.

■ Relying on *Clifford*, defendant argues that Officer Griego conducted an illegal search and seizure of defendant's residence. Defendant points to evidence that Officer Griego entered the building after the fire was out and the arson investigator had conducted a lawful cause and origin search. He also points to testimony by Officer Griego that he entered the premises for the purpose of investigating a suspected drug lab. Defendant reasons that, under *Clifford*, because the fire was extinguished and a cause and origin search had been completed, exigent circumstances did not exist to justify Officer Griego's warrantless entry onto the premises. We disagree.

Defendant's reliance on *Clifford* is misplaced. While it is true at that time a burning fire or the need for a cause and origin search did not exist, the presence of hazardous chemicals constituted exigent circumstances justifying Officer Griego's warrantless entry. The case of *United States v. Clark*, 617 F.Supp. 693 (E.D.Pa. 1985), *aff'd without opinion*, 791 F.2d 922 (3d Cir.1986), and *aff'd without opinion*, 833 F.2d 307 (3d Cir.1987), demonstrates the reasonableness of Officer Griego's actions. *See also United States v. Callabrass*, 607 F.2d 559 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980).

In *Clark*, fire officials and a police officer responded to the scene of a smoking building. *Id.*, 617 F.Supp. at 694. Their warrantless entry revealed an active methamphetamine lab. *Id.* at 695. Knowing

the potential hazards involved but not trained to handle the chemicals or dismantle the lab, the officers called narcotics detectives with more experience in the field. *Id.* The narcotics detectives determined that the lab and chemicals created a highly dangerous situation and called the Drug Enforcement Administration (DEA) because it had greater expertise. *Id.* When DEA agents arrived, they supervised the dismantling of the lab. *Id.*

The *Clark* court found that the narcotics detectives' plain view seizure of evidence inside the home was valid because they were lawfully on the premises without a warrant. *Id.* at 696. The court reasoned that the dangers posed by the lab and chemicals were the type of exigent circumstances Justice Stevens referred to in his concurrence in *Clifford* when he discussed the need to prevent the rekindling of a fire. *Id.* at 697. The instant case presents us with a similar situation.

Not being a hazardous material specialist, the arson investigator called the police impact team and chemist. Like the narcotics detectives in *Clark,* Officer Griego decided to delay removing the hazardous chemicals from the home until the chemist arrived. Moreover, Officer Griego was lawfully on the premises without a warrant because of the exigent circumstances created by the potentially hazardous chemicals in the house.

Defendant also places great weight on Officer Griego's statements that he was entering the premises to investigate a possible drug lab. We find such statements non-dispositive of the issues in this case. Other jurisdictions have held that an officer's subjective intentions during a search do not control the issue of exigent circumstances. *See United States v. Urban,* 710 F.2d 276 (6th Cir.1983); *United States v. Callabrass.* Indeed, our own case law frames the issue of exigent circumstances as whether an "officer could reasonably conclude that swift action was necessary." *State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986). Such a statement demonstrates that objective conditions rather than an officer's subjective

intentions determine whether exigent circumstances exist.

▪ We therefore conclude that substantial evidence does support the trial court's finding of exigent circumstances. *See State v. Warren.* We add that defendant's arguments concerning whether the police search was a true continuation of the initial cause and origin search or whether the arson investigator and Officer Griego entered together to perform a cause and origin search are irrelevant. It was the hazardous chemicals, and not a need for a cause and origin search, that provided the exigency.

▪ Based on Officer Griego's warrantless entry due to exigent circumstances, the trial court found that Officer Griego was entitled to seize the evidence in question because it was in plain view. For the seizure to come within the plain view doctrine, first there must be a prior valid intrusion. *State v. Dobbs,* 100 N.M. 60, 65, 665 P.2d 1151, 1156 (Ct.App.1983). On this ground alone, defendant challenges Officer Griego's plain view seizures. Because we find his intrusion valid under the exigent circumstances exception to the warrant requirement, we also find his seizure of the glassware and handguns valid under the plain view doctrine. The seizure of the briefcase and its contents poses a slightly different question.

▪ Citing *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), defendant asserts that he has a reasonable expectation of privacy in the briefcase itself. We agree. Under *Chadwick,* for the police to conduct a warrantless search of luggage, like a briefcase, probable cause plus an exception to the warrant requirement like exigent circumstances must exist. *Id.* at 13–15, 97 S.Ct. at 2484–86. Officer Griego testified that he opened the briefcase to make sure nothing hazardous was inside. Based on the hazardous chemicals he observed in the rest of the house, the trial court could find Officer Griego had probable cause to believe something hazardous may have been in the briefcase. *See State v. Santillanes,* 89 N.M. 727, 557 P.2d 576 (Ct.App.1976).

Moreover, the potentially hazardous conditions constituted exigent circumstances justifying a warrantless search of the briefcase. As the trial court noted:

There could really be something inside the briefcase. There could have been other weapons, may have been a stick of dynamite. God only knows what could have been in there, so all things remaining equal, I feel the search and the seizure of the materials was not in violation of the Fourth Amendment or the Constitution of the United States in any respect.

Because his intrusion into the briefcase was valid, Officer Griego was entitled to seize evidence in plain view. *See State v. Dobbs.* Defendant does not challenge whether the contents of the briefcase fell within the plain view doctrine. Therefore, we affirm the trial court's determination that Officer Griego lawfully seized the contents of the briefcase under the plain view doctrine.

We hold the trial court did not err in denying defendant's motion to suppress evidence. Because the trial court did not err, we do not address defendant's harmless error arguments. Accordingly, the verdicts and sentence below are affirmed.

IT IS SO ORDERED.

BIVINS, C.J., and DONNELLY, J., concur.