2008-NMCA-056

183 P.3d 158

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Gabriel MOORE, Defendant–Appellee.**

**No. 27,308.**

Court of Appeals of New Mexico.

March 19, 2008.

Gary K. King, Attorney General, Andrew S. Montgomery, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Joseph P. Walsh, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

VIGIL, Judge.

{1} In this State's appeal, we consider whether anhydrous ammonia leaking from the Defendant's garage by itself provided exigent circumstances to justify a warrantless entry into Defendant's home, located in a separate building thirty to forty feet away. The district court found that it did not and suppressed all evidence seized from Defendant's home. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Sergeant Clarence Gibson was patrolling in Estancia, New Mexico, when he smelled the odor of anhydrous ammonia, which he knew to be an ingredient used in the manufacture of methamphetamine. Gibson traced the odor to a garage on Defendant's fenced property, which was some thirty to forty feet away from the mobile home within the property. Gibson approached the garage, heard a loud banging noise, and noticed that the odor of anhydrous ammonia grew stronger. As he was looking through a crack in the garage door, the evaporative cooling system inside the garage activated, and Gibson was hit in the face with anhydrous ammonia vapors, which burned his eyes and lungs. Gibson returned to his vehicle which was parked at the end of Defendant's driveway, called for backup, and retrieved his shotgun.

{3} While returning to the garage, Gibson saw a man whom he recognized as Defendant's brother leave the garage, walk to the

door of the house, bang on the door, and yell for Defendant to come outside. When Defendant came outside, Gibson arrested both men and detained them in a police car located outside the perimeter of Defendant's property. Gibson testified that as he was placing Defendant's brother in the police vehicle, the brother said "Did you get everybody else? Everybody's in the house. They're running. Did you get them?" However, Defendant's objection to this testimony was sustained, and Gibson did not observe anyone fleeing, nor did he see or hear any indication that other people were inside the house.

{4} Gibson testified that he decided to perform a sweep of the house and the garage to make sure that there were no other suspects or other chemical hazards. He and another officer then searched Defendant's home. There were no people inside the house, but the officers saw and inventoried items relating to methamphetamine production in various parts of the home. Neither officer wore protective gear while searching Defendant's house, although they did wear protective gear while searching the garage. After searching Defendant's home, the officers called the fire department to evacuate two residences to the north and east of Defendant's property. Gibson then applied for a search warrant, setting forth the evidence he had observed in Defendant's home relating to methamphetamine production. A search warrant was issued, and under its authority, several officers entered Defendant's home again and seized evidence relating to methamphetamine production and distribution.

{5} Defendant moved to suppress all evidence seized from his home and garage as the fruits of a warrantless search in violation of the Fourth Amendment of the United States Constitution and article II, section 10 of the New Mexico Constitution. Defendant argued that the initial search of his residence was not authorized by any exception to the warrant requirement and that the warrant was obtained based on information gathered during the unlawful entry. Defendant argued that all evidence seized from his residence should be suppressed as fruit of the

poisonous tree. At the suppression hearing, it appeared to the district court that the State asserted New Mexico's emergency assistance doctrine, described in *State v. Ryon*, 2005–NMSC–005, 137 N.M. 174, 108 P.3d 1032, as the sole justification for the warrantless entry into Defendant's residence.

{6} The district court found that an emergency situation existed concerning the garage because of the anhydrous ammonia leak. However, the district court found that there was no emergency requiring an immediate entry into Defendant's home and that there was an insufficient nexus between the garage and Defendant's home, located thirty to forty feet away, to justify entering the home without a warrant. Furthermore, the district court found that the emergency assistance doctrine was inapplicable because Gibson's primary motivation in entering the house was to conduct a criminal investigation. Finally, the district court found that the search warrant for Defendant's home relied on information obtained in the unlawful entry into Defendant's home, and all evidence seized from the home was suppressed.

{7} The State then filed a motion to reconsider the suppression, this time arguing that the warrantless entry into Defendant's residence was justified by exigent circumstances. The State argued that there were exigent circumstances to justify the officers' entrance into the residence to ensure that there were no other individuals present in the house and that no other chemical operations were being conducted. The district court denied the motion to reconsider on its merits. The State appeals.

{8} In his motion to suppress, Defendant argued that the warrantless entry into his home was a violation of both article II, section 10 of the New Mexico Constitution and the Fourth Amendment of the United States Constitution. However, Defendant did not make any argument in district court or on appeal that he should be afforded greater protections under our state constitution. We therefore confine our analysis to the Fourth Amendment. *See State v. Jason L.*, 2000–NMSC–018, ¶ 9, 129 N.M. 119, 2 P.3d 856.

## II. DISCUSSION

{9} The State does not appeal the district court's ruling that the entry into Defendant's house was not justified under the emergency assistance doctrine. Rather, the State argues that exigent circumstances existed because (1) the anhydrous ammonia leaking from the garage presented a danger to human life and (2) there may have been other suspects in the house who could have escaped or destroyed evidence.

{10} "Exigent circumstances are defined as those situations where immediate action is necessary 'to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.'" *State v. Corneau*, 109 N.M. 81, 89, 781 P.2d 1159, 1167 (Ct.App.1989) (quoting *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App. 1986)). "The standard for determining exigency is an objective one; the question is whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude that swift action was necessary." *State v. Trudelle*, 2007–NMCA–066, ¶ 28, 142 N.M. 18, 162 P.3d 173 (internal quotation marks and citation omitted). "Whether the district court correctly determined that an exigency existed is a mixed question of fact and law that we review de novo." *Id.* In particular, we review the district's court's findings of historical fact under a deferential, substantial evidence standard, and then we determine de novo if the facts, as so established, support the conclusion of exigent circumstances. *See State v. Attaway*, 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994), *modified on other grounds by State v. Lopez*, 2005–NMSC–018, ¶¶ 13–20, 138 N.M. 9, 116 P.3d 80. We address each of the State's arguments in turn.

{11} The State first argues that the anhydrous ammonia emanating from the garage posed an active danger to human life inside the house thirty to forty feet away. We have previously considered whether exigent circumstances exist in the context of methamphetamine laboratories in three prior cases. In *State v. Johnson*, 2004–NMCA–064, ¶¶ 9, 11, 135 N.M. 615, 92 P.3d 61, *aff'd in part, rev'd in part on other grounds*, 2006–NMSC–049, 140 N.M. 653, 146 P.3d 298, the State argued that exigent circumstances justified non-compliance with our knock-and-announce rule because police suspected that there was a methamphetamine lab inside the defendant's motel room. We recognized that "[b]ecause a methamphetamine lab poses a danger of explosion, other jurisdictions have found that where officers know there is a lab in operation, that knowledge may create exigency." *Id.* ¶ 11. However, we determined that even if a working methamphetamine lab may give rise to an exigency, police must still demonstrate the existence of exigent circumstances with specific, particularized information. *Id.* ¶¶ 11–12.

{12} In *Trudelle*, police entered the defendants' home without a warrant after noticing a strong chemical odor associated with methamphetamine production on the defendants' property. 2007–NMCA–066, ¶¶ 2, 4, 142 N.M. 18, 162 P.3d 173. We again acknowledged "as a general matter that methamphetamine labs can be dangerous because they contain chemicals that may be explosive under certain conditions." *Id.* ¶ 32. However, we declined to recognize a per se exigency simply because there is probable cause to suspect the existence of a methamphetamine lab, and we reaffirmed that police officers must demonstrate that exigent circumstances exist through specific, particularized information. *Id.*

{13} In *State v. Calloway*, 111 N.M. 47, 50, 801 P.2d 117, 120 (Ct.App.1990), we held that exigent circumstances justified a warrantless entry because the defendant's home had caught on fire and an arson investigator had already become aware of the presence of hazardous chemicals during his lawful entry into the residence.

{14} Our cases therefore establish that mere probable cause that a methamphetamine lab exists is not per se an exigent circumstance that will justify a warrantless entry into a home. Police officers must still have knowledge of specific, articulable facts that demonstrate that immediate action is necessary "to prevent imminent danger to life or serious damage to property, or to

forestall the imminent escape of a suspect or destruction of evidence." *Copeland,* 105 N.M. at 31, 727 P.2d at 1346; *see State v. Duffy,* 1998–NMSC–014, ¶ 70, 126 N.M. 132, 967 P.2d 807 ("[T]he presence of exigent circumstances must be supported by specific articulable facts."), *modified on other grounds by State v. Gallegos,* 2007–NMSC–007, ¶ 17, 141 N.M. 185, 152 P.3d 828.

{15} Applying this standard, we agree with the district court's determination that there was no emergency situation with respect to Defendant's home. The district court found, and Defendant does not dispute, that there was an emergency situation in the garage because of the anhydrous ammonia leak. The State argues that the ammonia was being released from Defendant's garage into the air and that it caused injury to Gibson when he peered through a crack in the garage door. However, we agree with the district court that this did not necessarily create an emergency situation in Defendant's home, which was a separate building located some thirty to forty feet from the garage, and was not the source of the chemical release.

{16} Gibson only articulated a generalized desire to make sure there were no other suspects or chemical hazards in the residence. However, officers did not observe or hear any indication that any people inside the home were injured. Although the State argues that the ammonia was a threat to the entire neighborhood, officers detained Defendant and his brother in the area while they searched his home and garage and called in the fire department. Additionally, neither officer wore any protective gear while searching Defendant's home, although they wore protective gear when entering the garage. *See Trudelle,* 2007–NMCA–066, ¶ 32, 142 N.M. 18, 162 P.3d 173 (determining that exigent circumstances did not exist where neither the officers' conduct nor their observations indicated that immediate action was necessary). The State also points to the fact that police evacuated several residences in the area some time after the search of Defendant's home. However, the fact that police later undertook this action does not demonstrate a particularized showing that immediate entry into Defendant's home was necessary to prevent imminent danger to life. The State also argues that there could have been individuals inside the residence who were incapacitated. However, in the absence of any particularized facts suggesting that individuals were in fact incapacitated inside the residence, this is too speculative to allow a warrantless entry. *Cf. State v. Rowell,* 2007–NMCA–075, ¶ 27, 141 N.M. 783, 161 P.3d 280 (stating that exigent circumstances must be based on a showing of particularized facts, it cannot be theoretical), *cert. granted,* 2007–NMCERT–006, 142 N.M. 16, 162 P.3d 171.

■ {17} The State also argues that exigent circumstances justified the warrantless entry because of the possibility that other suspects inside the residence could have escaped or destroyed evidence. The State points to the statement of Defendant's brother regarding other suspects and the fact that officers had probable cause to believe that there was evidence of a methamphetamine lab on Defendant's property. The State argues that "[i]t was not a stretch to infer that, if the garage was being used to produce methamphetamine, there might be other suspects and other hazardous chemicals in the mobile home."

{18} We begin with the statement of Defendant's brother. The district court sustained Defendant's hearsay objection to this testimony, and in its decision, the district court pointed out that it ruled that the statement was not an excited utterance because Defendant's brother had a history with the police of erroneously telling them that others were involved in order to mislead the police. The court further expressly stated that the excited utterance exception was the only rationale offered by the State for admitting this testimony. The district court refused to admit the statement on the basis that it was hearsay. Additionally, the court found the statement insufficient to allow a warrantless entry under the emergency assistance doctrine because it only established a generalized suspicion as to possible other suspects and Gibson did not rely on the statement in deciding to enter the residence. *See Ryon,* 2005–NMSC–005, ¶ 29, 137 N.M. 174, 108

P.3d 1032 (stating the elements of the emergency assistance doctrine). The State argues that hearsay is admissible in a suppression hearing and that the statement was not hearsay because it was not offered for its truth, but to show that it was reasonable to believe that other suspects were in the residence. We do not reach these issues because they were not presented to the trial court. *See* Rule 12–216 NMRA (stating that appellate issues must be preserved in the trial court by fairly invoking a ruling). Even if we considered the State's non-hearsay argument, the district court found that Gibson did not rely on Defendant's brother's statement, and Defendant's brother's history with the police provides ample basis for this ruling.

{19} Moreover, even considering the statement, we do not believe that the State has shown a reasonable belief that swift action was necessary to prevent the escape of a suspect in light of all the other circumstances. Gibson testified that he did not see or hear anyone inside the residence, nor did he observe any indications that anyone was attempting to escape. *See State v. Wagoner*, 1998–NMCA–124, ¶ 19, 126 N.M. 9, 966 P.2d 176 (finding no exigent circumstances to justify warrantless entry where officers heard no indication that other suspects were inside the residence), *overruled on other grounds by Wagoner*, 2001–NMCA–014, ¶ 40, 130 N.M. 274, 24 P.3d 306. There was no evidence that Defendant or his brother had attempted to escape or flee when confronted by police. *Cf. Duffy*, 1998–NMSC–014, ¶ 71, 126 N.M. 132, 967 P.2d 807 (determining that exigent circumstances existed to believe that the defendant would escape or flee where he acted in an agitated and unpredictable manner and moved out of sight when police entered). There was no evidence that anyone inside the house was even aware of the officers' presence. *Cf. Wagoner*, 1998–NMCA–124, ¶ 18, 126 N.M. 9, 966 P.2d 176 (recognizing that courts have justified warrantless entry because of the reasonable possibility that the occupants of a dwelling are aware that law enforcement officers have focused their attention on them). Also, Defendant's

brother had been inside the garage immediately prior to his arrest, not inside the house.

{20} We also reject the State's claim that exigent circumstances existed because of the need to prevent the destruction of evidence. The State has not shown any particularized information that anyone inside the residence actually would have attempted to destroy any evidence. The State only articulated a generalized suspicion that there may have been suspects in the residence who may have attempted to destroy evidence. However, the mere belief that there are suspects inside a residence that contains evidence is not sufficient to constitute an exigency. Officers must articulate particularized facts to show that it is likely that evidence will be imminently destroyed. *See State v. Ortega*, 117 N.M. 160, 162, 870 P.2d 122, 124 (1994) (stating that the mere potential for destruction of evidence does not give rise to an exigency); *see also Johnson*, 2004–NMCA–064, ¶ 12, 135 N.M. 615, 92 P.3d 61 (determining that there were no exigent circumstances to justify non-compliance with the knock-and-announce rule where officers had no specific information that the defendant was likely to destroy evidence); *State v. Valdez*, 111 N.M. 438, 441, 806 P.2d 578, 581 (Ct.App.1990) (finding no exigent circumstances to justify warrantless entry where there was no indication that the defendant was about to destroy the evidence).

## III. CONCLUSION

{21} We agree with the district court's determination that there were no exigent circumstances justifying a warrantless entry into Defendant's residence. The district court's suppression order is affirmed.

{22} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, and JAMES J. WECHSLER, Judges.