**Certiorari Denied, January 25, 2011, No. 32,785**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-019**

**Filing Date: November 30, 2010**

**Docket No. 29,372**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**CHRISTOPHER ALLEN,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## OPINION

**CASTILLO, Judge.**

**{1}**     In this case, we consider whether a statement to a police officer that an active methamphetamine (meth) lab is present in a home when made by a person who just exited the home provides the particularized information necessary to conclude that there were exigent circumstances justifying a warrantless entry into the home. The district court

1

determined that the statement did give rise to exigency and denied Defendant's motion to suppress the evidence ultimately obtained from the home. Defendant appeals. We hold that exigent circumstances justified the warrantless search and therefore affirm the district court's denial of Defendant's motion to suppress.

## I.  BACKGROUND

**{2}**    Defendant was charged with trafficking in a controlled substance in violation of NMSA 1978, Section 30-31-20 (2006) and other related charges.  Defendant moved to suppress the evidence underlying the charges on the ground that the officers violated his rights by performing a warrantless search. The following is a summary of the facts presented at the suppression hearing.

**{3}**    Officer Frank Methola, a deputy with the Valencia County Sheriff's Department, was the primary witness at the hearing.  On January 31, 2008, Methola received a call from a manager of the retail store Auto Zone reporting a shoplifting incident during which the shoplifters stole a type of antifreeze called Heet and attempted to assault an employee in the process.  Methola was provided with a description of the suspects' vehicle.  He located that vehicle and observed the suspects drive into a gated storage facility.

**{4}**    Once inside the facility, Methola approached the suspects' vehicle, which was parked near a mobile home Defendant occupied with his brother Steve Lawson, the other shoplifting suspect.  As Defendant was exiting the vehicle, Methola approached and inquired whether Defendant had just come from Auto Zone.  Lawson had already entered the mobile home but then emerged at the same time Methola began questioning Defendant.   Both men acknowledged that they had been at Auto Zone. Methola explained that he received a report that they had stolen antifreeze.  Lawson initially denied the claim, but then berated Defendant for failing to pay for the antifreeze despite having been given money to do so. Lawson told Methola that the antifreeze was inside the house.

**{5}**    Methola patted both men down for weapons, during which he noticed a white powdery crystallized substance protruding from Defendant's pocket. Methola identified this substance as meth.

**{6}**    Methola intended to but had not yet arrested Defendant and Lawson when another person, later identified as Shannon Medina, unexpectedly emerged from the mobile home. Methola was startled by Medina's sudden appearance and immediately asked Medina whether anyone else was inside.  Medina did not respond, which prompted Methola to call for backup.

**{7}**    Yet another person then emerged from the mobile home, an individual named Brenda Morales.  Methola knew Morales.  Morales asked Methola whether she could speak with him, after which she told him that she had "warrants" and that "there was a meth lab active in the house."

2

**{8}**     Within two minutes of the call, backup arrived. Methola and several other deputies then performed a warrantless search of the mobile home. Methola expressed concern over the fact that numerous people had unexpectedly emerged from the home and that the back door was open. Before entering, the officers called out to determine whether anyone else was inside but received no response. When they entered the mobile home, the officers encountered a strong chemical smell consistent with meth production. They began coughing and their eyes were burning. Although they did not remain inside very long because of the irritation they were experiencing, they discovered pH strips, peroxide, Heet antifreeze, and a bag containing chemicals. Methola explained that all of these substances are consistent with meth production. The officers also found meth pipes, a crystallized product, and what appeared to be marijuana. When he exited, Methola spoke with the detectives and narcotics agents on scene about what he encountered inside.

**{9}**     During cross examination, Methola was asked why he felt compelled to perform the warrantless search. Methola responded that he was unsure whether anyone else was inside the mobile home, that he was particularly concerned that armed and hostile suspects may have been in the home, and that he was concerned with the potential for evidence destruction. Lastly, Methola stated that he was concerned for his safety because Morales had informed him that there was an active meth lab within the mobile home and, in Methola's experience, meth labs are "very explosive."

**{10}**     Agent Ronald Watkins of the Middle Rio Grande Valley Task Force also testified at the suppression hearing. Watkins received instructions to respond to the storage facility and, when he arrived, he spoke with Methola. Methola described to Watkins what he encountered inside the mobile home. Based on this information, Watkins prepared an application for a search warrant. Watkins summoned a clandestine meth lab team to dismantle the lab and seized a "grocery list" of items from inside and around the mobile home, all of which are used in meth production. This is the evidence Defendant sought to suppress.

**{11}**     The district court determined that Morales's statement that there was an active meth lab in the mobile home provided Methola with sufficiently particularized information to bring the warrantless search within the exigency exception to the warrant requirement. Defendant later entered a conditional plea to one count of trafficking but reserved the right to appeal the denial of his motion to suppress.

## II.    DISCUSSION

**{12}**     On appeal, Defendant urges reversal, claiming that "the search warrant that ultimately authorized the search and seizure of evidence was based on illegally obtained information" and, thus, the evidence is "the fruit of the poisonous tree and should have been excluded." As a preliminary matter, we note that in his motion to the district court, Defendant argued only that Methola conducted a warrantless search in violation of his rights. Now, on appeal, Defendant asserts that the warrant allowing the seizure of the evidence was tainted because it incorporated information based on the initial warrantless search. Although

we recognize that these arguments are slightly different, the basic question to be answered under either argument is the same:  was Methola's warrantless entry into Defendant's home based on exigency and therefore lawful?  Because we answer this question in the affirmative, we need not reach Defendant's contention regarding the validity of the warrant.

**{13}**     "The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects [t]he right of the people to be secure in their persons . . . and effects by prohibiting unreasonable searches and seizures."  *State v. Trudelle*, 2007-NMCA-066, ¶ 14, 142 N.M. 18, 162 P.3d 173 (internal quotation marks and citations omitted).  "The legality of a search . . . ultimately turns on the question of reasonableness."  *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032.  A warrantless search is presumptively unreasonable "unless it falls within an exception to the warrant requirement."  *State v. Corneau*, 109 N.M. 81, 89, 781 P.2d 1159, 1167 (Ct. App. 1989).  "Warrantless searches are permissible under the Fourth Amendment, as applied to the states by the Fourteenth Amendment, if they fall within one of the exceptions to the warrant requirements."  *State v. Ruffino*, 94 N.M. 500, 501, 612 P.2d 1311, 1312 (1980).  One such exception is the exigent circumstances rule.  *Id.*  The district court determined that the warrantless search Methola conducted fell within this exception.

**{14}**     "Whether the district court correctly determined that an exigency existed is a mixed question of fact and law that we review de novo."  *Trudelle*, 2007-NMCA-066, ¶ 28.  "A warrantless entry into a residence under the exigent circumstances rule requires probable cause plus exigent circumstances."  *Id.* (internal quotation marks and citation omitted).  There is no dispute over the facts here, and Defendant concedes that Methola had probable cause to suspect that there was an active meth lab in the house.  Defendant argues only that Methola's suspicion was insufficient to give rise to exigency.  The district court disagreed and concluded that Morales's statement alerted Methola to the possibility of an active meth lab in the house and this gave rise to the exigency.  This court has discussed exigency in the context of warrantless searches of meth labs on several occasions, but has never addressed the narrow issue presented here:  whether exigency justifies a warrantless search of a residence when an officer is told by an individual who has just emerged from that residence that there is an *active* meth lab inside.  We begin by reviewing the law of exigency and then examine our existing body of case law touching on exigency and warrantless searches of meth labs.

**{15}**     "The government bears the burden of establishing exigency."  *United States v. Rhiger*, 315 F.3d 1283, 1288 (10th Cir. 2003).  "The standard for determining exigency is an objective one; the question is whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude swift action was necessary."  *Trudelle*, 2007-NMCA-066, ¶ 28 (internal quotation marks and citation omitted).  "[T]he presence of exigent circumstances must be supported by specific articulable facts."  *State v. Duffy*, 1998-NMSC-014, ¶ 70, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828.  "[A]n officer's subjective intentions during a search do not control the issue of exigent circumstances."  *State v. Calloway*, 111 N.M. 47, 50, 801 P.2d 117, 120 (Ct. App. 1990).  "Exigent circumstances are defined as those situations where immediate action is necessary to prevent

4

imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Corneau*, 109 N.M. at 89, 781 P.2d at 1167 (internal quotation marks and citation omitted).

**{16}** In *Calloway*, we concluded that the presence of the potentially hazardous nature of the chemicals used to manufacture meth constitutes exigency. 111 N.M. at 50, 801 P.2d at 120. Fourteen years later, in dealing with a purported violation of the knock and announce rule, *State v. Johnson* recognized that in at least two other jurisdictions, courts have held that "where officers know there is a [meth] lab in operation, that knowledge may create exigency" because of the risk of fire, explosion, or other potential harms. 2004-NMCA-064, ¶ 11, 135 N.M. 615, 92 P.3d 61, *aff'd in part, rev'd in part on other grounds*, 2006-NMSC-049, 140 N.M. 653, 146 P.3d 298. Despite having made this observation, our Court ultimately determined that the officers did not possess an objectively reasonable belief of exigency because they had only the vaguest suspicion that there was a meth lab inside the dwelling. *Id.* ¶¶ 11-12.

**{17}** In both *Trudelle* and *Moore*, the officers suspected the existence of meth labs after detecting odors consistent with the chemicals used in meth production. *State v. Moore*, 2008-NMCA-056, ¶¶ 2-4, 144 N.M. 14, 183 P.3d 158; *Trudelle*, 2007-NMCA-066, ¶¶ 2-8. Warrantless searches of the structures identified as the sources of the odors ensued, and the officers' suspicions were confirmed. *Moore*, 2008-NMCA-056, ¶ 4; *Trudelle*, 2007-NMCA-066, ¶ 4. On appeal, we addressed whether the warrantless searches were justified pursuant to the exigency exception. *Moore*, 2008-NMCA-056, ¶¶ 9-16; *Trudelle*, 2007-NMCA-066, ¶¶ 28-32.

**{18}** In *Trudelle*, we recognized, as we did in *Johnson*, that meth labs "can be dangerous because they contain chemicals that may be explosive under certain conditions." *Trudelle*, 2007-NMCA-066, ¶ 32. Nevertheless, we concluded that an officer's suspicion of a meth lab, even though supported by probable cause, "does not rise to the level of an exigent circumstance." *Id.* We expressed concern that any other conclusion would establish "a per se exigency rule" applicable whenever officers possess "probable cause to suspect the existence of a [meth] lab." *Id.* We found this notion objectionable and instructed that "officers must show *particularized information, . . .* [supporting] an objectively reasonable belief of exigency." *Id.* (alteration in original) (internal quotation marks and citation omitted). We affirmed these conclusions in *Moore* and, relying on the well-developed rules of exigency, clarified that a warrantless search of a suspected meth lab falls within the exigency exception only when officers "have knowledge of specific, articulable facts that demonstrate that immediate action is necessary to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Moore*, 2008-NMCA-056, ¶ 14 (internal quotation marks and citation omitted).

**{19}** In *State v. Brown*, 2010-NMCA-079, ¶ 19, 148 N.M. 888, 242 P.3d 455, the most recent of our cases involving a warrantless search of a residence that housed a clandestine meth lab, the officers not only suspected the existence of a lab, but also had particularized information suggesting that someone may have been hiding in the residence, that the lab was active, and that it had the potential to explode or cause a fire. Accordingly, we determined

5

that exigency was present and that the warrantless search conducted in that case was justified. *Id.*

**{20}** We derive the following principles from this body of case law. It is now well settled that exigency is not present merely because an officer has probable cause to suspect the existence of a meth lab. *Brown*, 2010-NMCA-079, ¶ 15; *Moore*, 2008-NMCA-056, ¶ 14; *Trudelle*, 2007-NMCA-066, ¶ 32. We have consistently recognized, however, that the chemicals used to produce meth are potentially dangerous and decidedly so when being actively used to cook meth. *Brown*, 2010-NMCA-079, ¶ 19; *Johnson*, 2004-NMCA-064, ¶ 11; *Calloway*, 111 N.M. at 50, 801 P.2d at 120. Accordingly, we hold that where officers possess particularized information suggesting that a meth lab is active, that knowledge is sufficient to support a determination that exigency exists due to the dangerous nature of meth production and the very real possibility of explosion or fire inherent in the meth production process. Numerous authorities support this determination. *See Rhiger*, 315 F.3d at 1289-90 (danger associated with active meth lab sanctioned warrantless search by police officers); *United States v. Wilson*, 865 F.2d 215, 216-17 (9th Cir. 1989) (same)*; United States v. Walsh*, 299 F.3d 729, 734 (8th Cir. 2002) (same); *United States v. Spinelli*, 848 F.2d 26, 29 (2d Cir. 1988) (concluding that a warrantless search was justified by the exigent circumstance exception due, in part, to the fact that officers suspected ongoing and active manufacture of meth); *State v. Simmons*, 714 N.W.2d 264, 273-74 (Iowa 2006) (concluding that exigency justified the warrantless search of an apartment where an officer with expertise in clandestine meth labs smelled odor consistent with ongoing meth production); *State v. Chapman*, 813 P.2d 557, 560-61 (Or. Ct. App. 1991) ("We conclude that a working [meth] lab in an environment that poses a threat of immediate harm to life and property, presents exigent circumstances[.]"); 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.5(d), at p. 434 (4th ed. 2004) (stating that "a warrantless search of premises may be undertaken upon reasonable cause to believe that those premises contain . . . things imminently likely to burn, explode, or otherwise cause death, serious bodily harm, or substantial destruction of property").

**{21}** Applying these principles to the present matter, we conclude that Methola's warrantless search was justified under the exigent circumstances exception. Morales expressly informed Methola that there was an "active meth lab" in the house, and it is reasonable to infer that Methola understood Morales's statement to mean exactly what she said: that meth was actively—i.e., at that moment—being produced inside the home. Methola testified that his entrance into the home was motivated by a number of factors including the risk of explosion inherent in meth production. In our view, a prudent, cautious, and trained officer could reasonably conclude that the existence of an active meth lab required swift action to prevent imminent danger to life or serious damage to property.

### III. CONCLUSION

**{22}** For the foregoing reasons, we affirm.

**{23} IT IS SO ORDERED.**

6

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**Topic index for _State v. Allen_, Docket No. 29,372**

AE  APPEAL AND ERROR
AE-SR  Standard of Review

CT  CONSTITUTIONAL LAW
CT-FA  Fourth Amendment

CL  CRIMINAL LAW
CL-CL  Controlled Substances

CA  CRIMINAL PROCEDURE
CA-EC  Exigent Circumstances
CA-MR  Motion to Suppress
CA-WS  Warrantless Search