This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38720**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**KYLE REID,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Matthew G. Reynolds, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Almanza Abrams, P.A.
Steven L. Almanza
Las Cruces, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Kyle Reid appeals his convictions for one count of possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2021); one count of possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2022); and one count of possession of marijuana or synthetic cannabinoids (one ounce or less), contrary to Section 30-31-23(B)(1). Defendant argues on appeal that the district court erred in

denying his motion to suppress contending that (1) the warrantless entry into his residence violated his rights under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution; and (2) the officers violated his Fifth Amendment rights by failing to advise him of his *Miranda* warnings prior to questioning him about the smell of marijuana. We hold that the district court properly concluded that the warrantless entry of Defendant's home was justified by exigent circumstances, and that Defendant was not in custody at the time the officers questioned him about the marijuana. Therefore, we affirm.

## BACKGROUND

**{2}** In October 2017, officers arrived at Defendant's home searching for a known acquaintance of Defendant's (Robert Barrett) who violated his parole. As the officers approached Defendant's driveway, they smelled a heavy odor of burning marijuana. One officer entered the gate to Defendant's fenced yard, walked to the porch, and knocked on the door several times. Receiving no response, the officer walked back outside of Defendant's yard and stood in front of Defendant's house where another officer was standing. After a short delay, Defendant opened the door and stepped into his yard to speak with the officers near the fence. Defendant asked the officers why they were there. The officers told Defendant they had a warrant for Barrett's arrest and were looking for him. Defendant told the officers that Barrett had left earlier in the day. The officers asked Defendant if they could enter the home and search for Barrett, to which Defendant responded that the officers would need a warrant.

**{3}** One of the officers then asked Defendant who was smoking marijuana. Defendant stated that he had. The officer asked Defendant if he had a medical marijuana card, and Defendant responded that he did not. The officers asked Defendant who else was in the residence. Defendant stated his girlfriend was in the residence, and that she also did not have a medical marijuana card.

**{4}** The officers told Defendant that they intended to enter and secure the residence for a search warrant because of the smell of burning marijuana. The officers walked from the street side of Defendant's residence to the carport in order to enter Defendant's yard. Defendant told the officers they did not have permission to enter his property and stepped in front of the gate. Because Defendant refused to move, officers handcuffed him. The officers knocked on the door and announced their presence and their intent to enter the home to secure it. When no one responded, the officers forcibly entered the residence.

**{5}** Inside the residence, the officers found Defendant's girlfriend, another individual, marijuana in plain view, and Barrett. After a judge approved a search warrant, officers found marijuana, methamphetamine, and drug paraphernalia. A jury convicted Defendant of the three possession charges. This appeal followed.

## DISCUSSION

**I.      Exigent Circumstances Justified the Warrantless Entry Into Defendant's Home Under the Fourth Amendment and Article II, Section 10**

**{6}**      Defendant argues that the district court erred in denying his motion to suppress because the officers violated his rights under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution by conducting a warrantless search on his home not justified by exigent circumstances.[1] "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). We affirm the district court's finding of exigent circumstances and explain.

**A.      Defendant's Right Under the Fourth Amendment**

**{7}**      "The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects the right of the people to be secure in their persons and effects by prohibiting unreasonable searches and seizures." *State v. Trudelle*, 2007-NMCA-066, ¶ 14, 142 N.M. 18, 162 P.3d 173 (text only). The legality of a search turns on reasonableness. *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. "A warrantless search is presumptively unreasonable unless it falls within an exception to the warrant requirement." *State v. Allen*, 2011-NMCA-019, ¶ 13, 149 N.M. 267, 247 P.3d 1152 (internal quotation marks and citation omitted). The exception relevant to this appeal is the presence of exigent circumstances. *See id.*

**{8}**      "Exigent circumstances are defined as those situations where immediate action is necessary to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Moore*, 2008-NMCA-056, ¶ 10, 144 N.M. 14, 183 P.3d 158 (internal quotation marks and citation omitted). "The standard for determining exigency is an objective one; the question is whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude that swift action was necessary." *Id.* (internal quotation marks and citation omitted). "A warrantless entry into a residence under the exigent circumstances rule requires probable cause plus exigent circumstances." *Trudelle*, 2007-NMCA-066, ¶ 28 (internal quotation marks and citation omitted). "Whether the district court correctly determined that an exigency existed is a mixed question of fact and law that we review de novo." *Id.*

**{9}**      The district court found that (1) the officer "could smell the strong odor of burning marijuana coming from the residence"; (2) when asked, "Defendant stated that he was

---

[1]After denying Defendant's motion, the district court invited Defendant to file a renewed motion to suppress to develop testimony about the subjective intent of the officers for the primary purpose of the search under the emergency aid doctrine to Article II, Section 10 of the New Mexico Constitution. On appeal, we conclude, and the parties agree, that the emergency aid doctrine does not apply. The officers testified that their entry into the home was to secure the residence and prevent the destruction of marijuana while they applied for a search warrant. Therefore, the emergency aid doctrine does not apply because the officers acted with the intent to seize evidence. *See State v. Yazzie*, 2019-NMSC-008, ¶ 48, 437 P.3d 182.

smoking marijuana inside the residence" and "did not have a medical marijuana card"; (3) "Defendant stated only his girlfriend" was inside the home and she also "did not have a medical marijuana card"; and (4) no one answered when the officers approached the home and knocked on the front door, leading to the officers' "forced entry into the residence in order to secure it, its occupants, and any potential evidence while [one officer] applied for a search warrant." Therefore, the district court concluded "there is substantial evidence of exigent circumstances justifying the [officers] entry into Defendant's home without a warrant or consent of . . . Defendant."

**{10}**     Defendant does not challenge the district court's underlying factual findings on appeal. Instead, Defendant argues that these facts do not rise to the level of exigent circumstances to justify the warrantless entry of the home because possession of marijuana at the time was a misdemeanor. Defendant also argues that the officers used his statements concerning marijuana as a pretext to enter his residence in search of a criminal suspect. Because Defendant does not argue that the officers lacked probable cause, we turn to the question of exigent circumstances.

**{11}**     Defendant's argument relies on this Court's analysis of exigent circumstances in *State v. Wagoner*, 1998-NMCA-124, 126 N.M. 9, 966 P.2d 176. In *Wagoner*, officers arrived at a trailer home to investigate possible drug activity based on a tip. *Id.* ¶ 3. The officers smelled burning marijuana as they approached the trailer. *Id.* ¶ 4. The defendant and his son opened the door after a short delay when the officer's knocked on the door and announced their presence. *Id.* The officers informed the defendant of the tip regarding drugs and repeatedly requested consent to enter the trailer. *Id.* ¶ 5. The defendant denied that there was marijuana in the residence and told the officers they needed a warrant to enter. *Id.* Both the defendant and his son stated no one else was inside the trailer, and the officers heard no other noise inside. *Id.* ¶ 6. The officers entered the trailer without a warrant to determine whether a third person was inside, and while walking through the trailer, discovered marijuana in plain view. *Id.* The officers then applied for a search warrant. *Id.* ¶ 7.

**{12}**     The district court found that the warrantless entry was not justified by exigent circumstances, and this Court affirmed for three reasons. *Id.* ¶¶ 8, 26. First, nothing indicated the presence of a third person inside the trailer after the door was opened. *Id.* ¶ 19. Second, even if there was a third person in the trailer, the state presented no evidence that the person would have been able to destroy the evidence before a warrant was obtained. In fact, this Court reasoned that, upon hearing a third person, the officers "would be justified in entering the trailer to investigate, and prevent tampering with evidence." *Id.* ¶ 20. Finally, this Court stated "the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense has been committed." *Id.* ¶ 21 (omission, internal quotation marks, and citation omitted). As such, the district court could require "a showing of a more substantial probability" that the evidence could be destroyed. *Id.*

**{13}**     Defendant relies on the third prong of this Court's analysis to support his argument. However, the facts of *Wagoner* are distinguishable from the facts of this

case. Unlike the officers in *Wagoner*, the officers here were aware that at least one other person, Defendant's girlfriend, was inside the home prior to entering the trailer. The officers were also aware that neither Defendant nor his girlfriend had a medical marijuana card. The girlfriend did not respond when the officers knocked on the door and first spoke to Defendant and when they knocked on the door and announced their intent to secure the home for a search warrant. The officer explained that, based on the odor of burning marijuana, the evidence was actively being destroyed while the officers were standing outside the house. Therefore, the evidence demonstrates a "showing of a more substantial probability" that evidence could be, or was being, destroyed after the officers knocked and announced their presence. *See id.* Indeed, under this Court's analysis in *Wagoner*, the officers here "would be justified in entering the [home] to investigate, and prevent tampering with evidence" because the officers knew another person was in the home. *See id.* ¶ 20.

**{14}**    Because the facts here are distinguishable from the facts in *Wagoner*, we find Defendant's reliance on *Wagoner* misplaced. Instead, we conclude that substantial evidence supports the district court's determination that exigent circumstances existed to justify the warrantless entry of Defendant's home. The officers could smell burning marijuana from the driveway of Defendant's property and during their conversation with Defendant. Defendant admitted that both he and his girlfriend, who was still in the home, had been smoking marijuana and that neither of them had a medical marijuana card. The occupants of the home did not answer the door when the officers initially knocked on the door nor when the officers notified the occupants that they were going to secure the home for a search warrant.

**{15}**    From these facts, a reasonable officer could believe that there was a danger the remaining marijuana would be destroyed and that immediate action was needed to secure the evidence. *See State v. Pool*, 1982-NMCA-139, ¶¶ 11-12, 98 N.M. 704, 652 P.2d 254 (concluding that exigent circumstances existed when the defendant opened the door and saw the officer, the officer smelled burning marijuana, and the defendant closed the door to prevent the officer entering the room). As such, we conclude that the officers' warrantless entry into the home was supported by exigent circumstances. Therefore, we affirm the district court's denial of Defendant's motion to suppress on Fourth Amendment grounds.

### B.    Interstitial Approach and Defendant's Right Under Article II, Section 10 of the New Mexico Constitution

**{16}**    Because we hold that Defendant's right is not protected by the Fourth Amendment, we turn to his argument under Article II, Section 10 of the New Mexico Constitution. *See State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1 ("Under the interstitial approach, the court asks first whether the right being asserted is protected under the federal constitution. . . . If it is not, then the state constitution is examined."). We must consider whether the New Mexico Constitution provides broader protection, and "we may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or

distinctive state characteristics." *State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957 (internal quotation marks and citation omitted).

**{17}** Article II, Section 10 of the New Mexico Constitution guarantees that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." "The key inquiry under Article II, Section 10 is reasonableness." *Ketelson*, 2011-NMSC-023, ¶ 20. New Mexico courts have recognized broader protections of an individual's privacy rights under Article II, Section 10 than the Fourth Amendment. *See Yazzie*, 2019-NMSC-008, ¶ 45 (listing cases where New Mexico courts have recognized broader protections under Article II, Section 10). New Mexico's "strong preference for warrants" is the distinct state characteristic at issue here. *State v. Crane*, 2014-NMSC-026, ¶ 16, 329 P.3d 689 (internal quotation marks and citation omitted).

**{18}** "[U]nless there is an exception to the warrant requirement, the government must get a warrant before exceeding the scope of a private search." *State v. Rivera*, 2010-NMSC-046, ¶ 25, 148 N.M. 659, 241 P.3d 1099. Our analysis under Article II, Section 10 applies the same recognized exceptions to the warrant requirement, including exigent circumstances. *See Rivera*, 2010-NMSC-046, ¶ 25 (listing the recognized exceptions to the warrant requirement under Article II, Section 10). Like our analysis under the Fourth Amendment, our analysis of exigent circumstances requires "a determination of whether in a given situation a prudent, cautious, and trained officer, based on facts known, could reasonably conclude swift action was necessary." *State v. Duffy*, 1998-NMSC-014, ¶¶ 61, 70, 126 N.M. 132, 967 P.2d 807 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{19}** Defendant argues that the officers violated his right under Article II, Section 10 for the same reasons that the officers violated his right under the Fourth Amendment. But Defendant does not explain how our analysis under Article II, Section 10 should differ when we apply the same standard of reasonableness to the officers' actions. Instead, Defendant merely asserts for the same reasons set forth in his Fourth Amendment argument, "[T]he evidence against [Defendant] was the fruit of an illegal search and seizure in violation of his state constitutional rights." The question whether the protection of Article II, Section 10 should be interpreted more expansively under circumstances such as these simply was not briefed or developed, and we therefore do not reach this issue. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Therefore, we affirm the district court's denial of Defendant's motion to suppress on Article II, Section 10 grounds.

## II. The Officers' Questioning of Defendant Did Not Violate the Fifth Amendment

**{20}** We next address Defendant's argument that the district court erred in denying his motion to suppress because the officers violated Defendant's Fifth Amendment rights.

Defendant contends that he was in custody when he made incriminating statements about his marijuana use and that the officers failed to read Defendant his *Miranda* rights before questioning him. Like our review of Defendant's Fourth Amendment challenge, we review factual challenges for substantial evidence and the application of the law de novo. *See State v. Atencio*, 2021-NMCA-061, ¶ 13, 499 P.3d 635. We disagree with Defendant's claim that he was subject to a custodial interrogation and explain.

**{21}** "*Miranda* warnings only apply when (1) the person is in custody; and (2) any questioning meets the legal definition of interrogation." *Id.* ¶ 18. "Custody is defined as either (1) a formal arrest, or (2) a restraint on freedom of movement of the degree associated with a formal arrest." *Id.* ¶ 19 (internal quotation marks and citation omitted). We apply an objective test when determining if a suspect was in custody, and as such, the subjective beliefs of the defendant are irrelevant. *See id.* "Rather, we consider how a reasonable man in the suspect's position would have understood his situation." *Id.* (internal quotation marks and citation omitted).

**{22}** If there is no formal arrest prior to questioning however, we "engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place in order to decide whether the custody requirement is met." *Id.* ¶ 20 (internal quotation marks and citation omitted). "The following factors guide our inquiry: the purpose, place, and length of interrogation, the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant." *Id.* (text only).

**{23}** Based on the totality of circumstances, we hold that Defendant was not in custody at the time officers questioned Defendant about the smell of marijuana. Defendant was questioned only briefly, in his front yard, separated by a fence from the officers, and publically in his neighborhood. Defendant voluntarily spoke with the officers, and there is no indication that Defendant was not free to leave the conversation if he so chose. *Cf. State v. Olivas*, 2011-NMCA-030, ¶ 13, 149 N.M. 498, 252 P.3d 722 (recognizing that a defendant's willingness to meet with officers is a factor in favor of holding that an interrogation was noncustodial). Finally, although Defendant was confronted about his use of marijuana, officers only asked about the smell and did not use other, more forceful persuasive techniques in the conversation. *See Atencio*, 2021-NMCA-061, ¶ 27 (reasoning that an officer's use of "powerful persuasive techniques" when questioning the defendant was a factor in favor of holding that an interrogation was custodial).

**{24}** Defendant argues that he was "surrounded by antagonistic forces" at the time of questioning, but the degree of confrontation does not rise to the level such that "a reasonable man in the suspect's position would have understood" he was in police custody. *Id.* ¶ 19 (internal quotation marks and citation omitted). Therefore, based on the totality of the circumstances, Defendant was not in custody at the time officers questioned him about the smell of marijuana, and we affirm the district court's denial of Defendant's motion to suppress on Fifth Amendment grounds.

**CONCLUSION**

**{25}**    For the forgoing reasons, we affirm.

**{26}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**